979 So.2d 396 (2008)
John Randall WINNEY, Former Husband, Appellant,
v.
Jayme Carol WINNEY, Former Wife, Appellee.
No. 1D07-2960.
District Court of Appeal of Florida, First District.
April 21, 2008.
*398 Corrine A. Bylund of Zisser, Robison, Brown, Nowlis & Maciejewski, P.A., Jacksonville, for Appellant.
William J. Dorsey, Jacksonville; and Michael J. Korn and Mary C. Coxe of Korn & Zehmer, P.A., Jacksonville, for Appellee.
LEWIS, J.
John Randall Winney, Appellant, seeks review of a final judgment dissolving his marriage to Jayme Carol Winney, Appellee. Appellant challenges the trial court's rulings regarding primary physical residency of the parties' minor child, child support, alimony, life insurance as security for child support, and the distribution of the parties' assets and liabilities. We affirm the portions of the final judgment regarding primary physical residency and the award of child support without further discussion. We agree with Appellant that the trial court erred in failing to make the required factual findings to support the requirement that Appellant obtain life insurance as security for child support. However, because this error was harmless, we affirm that portion of the final judgment as well. We also agree with Appellant that the trial court reversibly erred in failing to include the required factual findings to support the alimony award and the distribution of the parties' assets and liabilities. On the record before us, we cannot say this error was harmless. Therefore, we reverse the portions of the final judgment concerning alimony and equitable distribution and remand for entry of factual findings and further proceedings consistent with this opinion.
The basic facts regarding the parties' history together are undisputed. Before the parties met, Appellant acquired and lived on a tract of real property in Middleburg, Florida. He also owned some items of personal property including a mobile home, a motorcycle, a bedroom suite, and a washing machine. When the parties met, Appellee was attending stenography school with the hope of becoming a court reporter. At some point during the parties' relationship, but before they were married, Appellee quit stenography school and began working full-time. In February 2000, Appellee moved in with Appellant. Later in 2000, a new mobile home was purchased, and the parties began to live in it. Appellant traded in his older mobile home to pay part of the price of the newer home. The parties married on July 18, 2001, and continued living in the new mobile home on Appellant's previously-acquired real property in Middleburg, Florida. On the date of the marriage, Appellant still owed a substantial amount toward the primary mortgage on the home. The parties lived in the home together until November 2005, when Appellant filed a petition for dissolution of marriage. During the marriage, the parties had acquired various debts and items of personal property. Among the debts incurred during the marriage was an obligation to Volkswagen for a lease on a 2006 Passat and a $50,000.00 home equity line of credit. While the parties were separated, Appellee quit her full-time job and returned to stenography school while working part-time as a waitress. The remaining relevant facts are in dispute.
*399 At trial, Appellee testified that before the parties' marriage, she quit stenography school because Appellant would not support her and encouraged her to quit. Appellee also submitted a financial affidavit reflecting expenses that greatly exceeded her income. She requested rehabilitative alimony, arguing that Appellant had caused her to quit stenography school, that her expected career as a court reporter would benefit the parties' minor child, and that she could not work full-time while attending school. Appellee also sought a portion of the value of the marital home as part of the equitable distribution. She testified that she and Appellant had bought the new mobile home after they had begun living together and sharing expenses. She further testified that she helped select and decorate the new mobile home and that, during the marriage, she and Appellant together made substantial improvements to the mobile home and real property. Appellee argued that the value of the home had appreciated during the marriage, due in part to the substantial improvements she and Appellant made.
Appellant contested Appellee's request for alimony and her claims that part of the marital home was marital property. He argued that she voluntarily quit stenography school and began to work full-time before the marriage.[1] He further argued that because Appellee had voluntarily quit her full-time job to return to school, full-time income should be imputed to her. Appellant also submitted a financial affidavit reflecting that his expenses exceeded his income. As part of his financial disclosures, Appellant produced evidence that his employer provided basic life insurance in the amount of $97,400.00 at no cost to him and that he had elected to receive supplemental life insurance in the amount of $146,000 for a cost of $5.39 per month. As to the marital home, Appellant disputed Appellee's characterization of the changes to the home as substantial improvements. He contended that the marital home, along with any assets bought with the home equity line of credit, was his nonmarital property.
After hearing voluminous testimony regarding the contested issues of equitable distribution, alimony, and child support, the trial court entered an order with few findings related to these issues. Specifically, the trial court ordered Appellant to pay Appellee rehabilitative alimony in the amount of $300.00 per month for a period of twenty-four months, but the only finding to support this award was that Appellee "was participating in a trade school education program which was interrupted by the marriage." The trial court also ordered Appellant to maintain a life insurance policy with death benefits in the amount of $100,000.00, as security for child support, without making any findings as to the necessity or affordability of life insurance. In devising a scheme of equitable distribution, the trial court noted that each party was awarded one-half of the net value of the marital assets and liabilities, but it did not make findings as to which assets were marital and which were nonmarital. The trial court also failed to distribute all of the parties' liabilities. Most notably, the court neglected to mention the debt to Volkswagen. After distributing some of the parties' liabilities, the court ordered each party to be responsible for his or her "remaining personal debt, including credit card debt" but did not explain *400 what debt was "personal" to each party. The trial court did not assign a monetary value to this debt or explain why it was considered nonmarital.
A trial court's failure to make adequate factual findings in a final judgment of dissolution of marriage is typically reversible error because, in most circumstances, this failure precludes meaningful appellate review. See, e.g., Stalnaker v. Stalnaker, 892 So.2d 561, 563 (Fla. 1st DCA 2005); Shoffner v. Shoffner, 744 So.2d 1157, 1158 (Fla. 1st DCA 1999); Walsh v. Walsh, 600 So.2d 1222, 1223 (Fla. 1st DCA 1992). This Court has held that a trial court must make findings to address specific issues when awarding alimony, ordering a party to carry life insurance, and devising an equitable distribution scheme. Schoditsch v. Schoditsch, 888 So.2d 709, 709 (Fla. 1st DCA 2004) (addressing life insurance as security); Shoffner, 744 So.2d at 1158 (addressing alimony and equitable distribution).
The requirement that trial courts make certain findings is driven by specific statutory mandates as well as the need for a sufficient basis for appellate review. When awarding alimony, a trial court must make findings as to the recipient's need and the obligor's ability to pay, Walsh, 600 So.2d at 1223, and these findings must reflect a consideration of all relevant economic factors, as provided in section 61.08(2), Florida Statutes (2007). When ordering a parent to obtain life insurance as security for child support, trial courts must bear in mind that such an order is authorized only to the extent that it is necessary to protect the child support award. See § 61.13(1)(c), Fla. Stat. (2007). A trial court may not order a party to obtain life insurance without making factual findings regarding the necessity of such coverage. See Schoditsch, 888 So.2d at 709 (referencing section 61.08(3), Florida Statutes (2003), which permits a trial court to order a party to obtain life insurance as security for alimony "to the extent necessary to protect" the award). Such findings must reflect consideration of the cost and availability of such insurance. Stalnaker v. Stalnaker, 892 So.2d 561, 563 (Fla. 1st DCA 2005). The statutory requirement that a trial court justify distributions of marital assets and liabilities is more explicit. See § 61.075(3), Fla. Stat. (2007). A trial court must make written findings reflecting the following:
(a) Clear identification of nonmarital assets and ownership interests;
(b) Identification of marital assets, including the individual valuation of significant assets, and designation of which spouse shall be entitled to each;
(c) Identification of the marital liabilities and designation of which spouse should be responsible for each liability;
(d) Any other findings necessary to advise the parties or the reviewing court of the trial court's rationale for the distribution of marital assets and allocation of liabilities.
Id. In making these findings, trial courts must bear in mind that any asset or liability acquired before the marriage is nonmarital and belongs to the party who acquired it. § 61.075(5)(b)(1), Fla. Stat. (2007). Additionally, a trial court's findings should reflect an understanding that if one party's nonmarital property appreciates due to the efforts of either party during the marriage or the "contribution or expenditure thereon of marital funds or other forms of marital assets," the appreciation is marital property and should be accounted for in the equitable distribution scheme. § 61.075(5)(a)2, Fla. Stat. (2007). If a trial court's failure to include the required factual findings hampers effective appellate review, remand is necessary. *401 Shoffner, 744 So.2d at 1158 (Fla. 1st DCA 1999); Walsh, 600 So.2d at 1223.
However, inadequate factual findings in a final judgment of dissolution of marriage sometimes constitute harmless error. See Hughes v. Hughes, 955 So.2d 1201, 1202 (Fla. 1st DCA 2007); Fulmer v. Fulmer, 961 So.2d 1081, 1083 (Fla. 1st DCA 2007) (Kahn, J. concurring). In the instant case, the trial court's error in neglecting to include the required findings to support its order that Appellant maintain life insurance as security for child support was harmless because Appellant presented undisputed evidence that, at the time of trial, he had life insurance for more than the ordered amount. This already existing life insurance policy is sufficient to satisfy the trial court's order, so long as Appellant names the parties' minor child as the sole and irrevocable beneficiary thereon. In contrast, we cannot conclude, on the record before us, that the trial court's failure to make the statutorily required factual findings regarding alimony and equitable distribution was harmless.
The parties presented conflicting evidence relevant to the alimony and equitable distribution determinations. It is unclear from the final judgment how the trial court resolved these conflicts. In particular, the final judgment does not reveal how the trial court arrived at the sum of $300.00 per month for alimony and whether the trial court considered Appellant's ability to pay that amount. On appeal, Appellant contends that he does not have the ability to pay alimony and points to his financial affidavit for support. Of course, this Court is not in a position to reach a conclusion as to that contention. Therefore, on remand, the trial court should make findings that reflect its consideration of whether Appellee needs $300.00 per month in alimony and whether Appellant has the ability to pay that amount, consistent with the requirements of section 61.08. While the trial court is entitled to reject the representations made in Appellant's financial affidavit, we cannot review or give effect to that rejection without adequate factual findings.
The area of the final judgment addressing equitable distribution suffers similar defects. It is unclear which assets the trial court considered marital and which assets it considered nonmarital. Similarly, the trial court failed to classify the parties' debts as marital and nonmarital and altogether neglected to address the debt to Volkswagen. We cannot begin to determine whether the trial court arrived at the correct result in its distribution of assets and liabilities because the final judgment does not provide the basic starting point of determining which assets were marital and which were nonmarital. In particular, it is clear that some portion of the marital home was nonmarital property, and yet, the trial court did not designate what portion of the home's value was a marital asset.[2] Additionally, we note that the requirement that each party pay his or her own "personal debt" is meaningless without an accompanying classification of which debt is marital and which is nonmarital.
Because the trial court's decisions concerning alimony and equitable distribution *402 are not amenable to effective appellate review, we must remand the case for factual findings as to these issues. In all other respects, the final judgment of dissolution of marriage is affirmed. If necessary, on remand, the trial court may hear additional evidence to make the required factual findings in support of its determinations as to alimony and equitable distribution. See Shoffner, 744 So.2d at 1157. Furthermore, in the interests of the parties and judicial economy, the chief judge of the circuit court is directed to assign this case to the trial judge who entered the final judgment for the purpose of conducting further proceedings consistent with this opinion. See id.
Appellee filed a motion for appellate attorney's fees, and Appellant filed no response. Based on the financial information provided in the record, it appears that Appellee has a need for fees and that Appellant has an ability to pay them. However, because the ultimate determination on this issue requires a finding of fact, Appellee's motion is provisionally granted, subject to verification at the trial level of the respective parties' need and ability to pay. See Davis v. Davis, 584 So.2d 1117, 1117 (Fla. 1st DCA 1991). On remand, the trial court should assess what amount, if any, Appellee should receive in attorney's fees in accordance with the rationale of Dresser v. Dresser, 350 So.2d 1152 (Fla. 1st DCA 1977).
AFFIRMED in part, REVERSED in part, and REMANDED.
BROWNING, C.J., and HAWKES, J., concur.
NOTES
[1] On appeal, Appellant does not challenge the propriety of awarding rehabilitative alimony under these circumstances. Instead, his arguments for reversal of the alimony award are focused on the fact that the trial court failed to make findings regarding Appellee's need for alimony and his ability to pay it.
[2] Appellee argues that even if the trial court used incorrect methodology to determine how to distribute the parties' assets and liabilities, the equitable distribution scheme should be affirmed because any error was in Appellant's favor. In advancing this argument, she asserts, among other things, that the value of the marital home appreciated by $40,000 during the marriage. Because the trial court did not make a specific finding as to the amount, if any, of appreciation, we cannot rely on the figures Appellee proposes to support a determination that the trial court arrived at the correct result.