WETHERELL, J.
Appellant, the Former Husband, appeals a final judgment of dissolution of marriage. He raises a number of issues, but only one merits discussion: whether the trial court erred in awarding permanent alimony to Appellee, the Former Wife, without addressing whether other forms of alimony would be fair and reasonable under the circumstances. We reverse and remand for further proceedings on this issue, and we affirm the other issues raised by the Former Husband without further comment.
The parties had been married for 16 years and 8 months at the time the petition for dissolution of marriage was filed. They have two children, twins born in August 1996. The Former Husband is a self-employed architect and was the primary breadwinner during the marriage; the Former Wife was primarily a homemaker/stay-at-home mom, although she did earn income during the marriage from selling real estate and from her ownership of a maid service business. The Former Wife’s real estate license is currently inactive, and the maid service business was sold during the pendency of the dissolution proceeding.
In the final judgment, the trial court awarded the Former Wife $750 per month in permanent alimony and $1,121 per month in child support. The Former Husband contends on appeal that the alimony award must be reversed because the trial court did not make the statutorily-required finding that no form of alimony other than permanent alimony would be fair and reasonable under the circumstances. We agree.
Section 61.08(2), Florida Statutes (2011),[1] provides that in determining whether to award alimony, the trial court must first consider whether the requesting party has a need for alimony and whether the other party has the ability to pay. Then, in determining the type and amount of alimony, the court must consider “all relevant factors” including those set forth in section 61.08(2)(a) through (j). And in the case of permanent alimony, the court must also find that “no other form of alimony is fair and reasonable under the circumstances of the parties.” § 61.08(8), Fla. Stat.
At this point in the proceeding, there is no dispute that the Former Wife has a need for alimony and that the Former Husband has the ability to pay. However, as he did in his motion for rehearing below, the Former Husband contends that the trial court erred in awarding permanent alimony without expressly finding that no other form of alimony would be appropriate under the circumstances. The Former Wife responds that it is implicit in the detailed findings made by the trial *397 court addressing the factors in section 61.08(2)(a) through (j) that the court determined that no other form of alimony would be appropriate under the circumstances. We disagree with the Former Wife.
The purpose of permanent alimony is to “provide for the needs and necessities of life as they were established during the marriage of the parties for a party who lacks the financial ability to meet his or her needs and necessities of life following a dissolution of marriage.” § 61.08(8), Fla. Stat.; see also Walker v. Walker, 85 So.3d 553, 554 (Fla. 1st DCA 2012) (quoting similar language from Canakaris v. Canakaris, 382 So.2d 1197, 1201 (Fla.1980)). There is no presumption for or against permanent alimony in this case because the parties’ marriage was a “grey area” marriage. See Sellers v. Sellers, 68 So.3d 348, 350 (Fla. 1st DCA 2011) (noting that marriages of less than 17 years in duration are “grey area” marriages in which there is no presumption for or against permanent alimony); and cf. § 61.08(8), Fla. Stat. (stating that an award of permanent alimony for moderate-duration marriages — those of between 7 and 17 years — must be based on clear and convincing evidence after consideration of the factors in section 61.08(2)).
The trial court found that the parties had a comfortable middle-class standard of living during their marriage. The court also found that the Former Husband has a high earning capacity as a professional architect, whereas the Former Wife’s earning capacity is limited based on her minimal vocational skills and her responsibility as the primary caretaker for the parties’ children. Additionally, the court noted that the Former Wife’s earning capacity was further limited by the fact that the Former Husband obtained an order precluding the Former Wife from moving out of the Okaloosa/Walton County area so the children could attend Fort Walton Beach High School.
The parties’ disparate earning capacity is a “significant factor” in determining whether permanent alimony is appropriate, see Sellers, 68 So.3d at 350; however, this factor is not sufficient by itself to justify an award of permanent alimony or to rule out other forms of alimony. Instead, the trial court must consider “all relevant factors” in determining what type of alimony is appropriate. § 61.08(2), Fla. Stat. (2011); and cf. Ondrejack v. Ondrejack, 839 So.2d 867 (Fla. 4th DCA 2003) (holding that lack of find ings on statutory factors prevented court from determining appropriateness of bridge-the-gap alimony over permanent alimony).
Here, the trial court’s order included detailed findings as to each of the factors in section 61.08(2)(a) through (j). But, contrary to the Former Wife’s argument in her brief, these findings do not “show[] that permanent alimony is required in this case and show[] that no other form of alimony is fair and reasonable under the circumstances of the parties.” In actuality, these findings reflect that the most significant limitation on the Former Wife’s earning capacity will be gone in several years when the parties’ children reach the age of majority and are no longer in school. The trial court’s findings also reflect that, although the Former Wife’s vocational skills may be limited, she is only 45 years old with no significant health problems affecting employment and she holds a Bachelor’s degree and a real estate license. Thus, even though permanent alimony may very well be appropriate under the circumstances, the trial court’s findings suggest that other forms of alimony, such *398 as bridge-the-gap alimony or durational alimony,[2] might also be fair and appropriate.
That being the case, the trial court was required to determine whether permanent alimony was the most fair and reasonable type of alimony under the circumstances and it was obligated to include sufficient findings in its order to explain its decision. See § 61.08(8), Fla. Stat. Because the trial court failed to make such findings, we reverse the court’s determination of the Former Wife’s entitlement to permanent alimony and remand for reconsideration. If, on remand, the trial court again orders permanent alimony, it must make the findings required by section 61.08(8).
In sum, for the reasons stated above, we reverse the award of permanent alimony in the final judgment and remand for further proceedings consistent with this opinion. We affirm the final judgment in all other respects.
REVERSED in part; AFFIRMED in part; REMANDED for further proceedings.
VAN NORTWICK and MAKAR, JJ., concur.

. Even though the petition for dissolution of marriage was filed in July 2009, the 2011 version of section 61.08 applies in this case because the final judgment containing the initial alimony award was entered in November 2011. See Ch.2011-92, § 80, Laws of Fla. (providing that the 2011 amendments to section 61.08 apply in all cases pending on July 1, 2011, and to all initial awards of alimony entered after that date).

. See § 61.08(5) and (7), Fla. Stat. (2011) (describing bridge-the-gap alimony and dura-tional alimony, respectively). It does not appear that rehabilitative alimony is appropriate based on the current record because, as the trial court found, there was no evidence presented of any plan for either party to receive additional training or education. See § 61.08(6)(b), Fla. Stat. (2011) (requiring a "specific and defined rehabilitative plan [to] be included as a part of any order awarding rehabilitative alimony”).