WRIGHT, WILLIAM L., Associate Judge.
Mary Helen Broemer, the former wife, appeals portions of an amended final judgment dissolving her twenty-seven-year marriage to Thomas Carl Broemer. The former wife contends that the trial court abused its discretion in imputing income to her and in denying her motion for additional attorney’s fees and costs, and erred in awarding durational alimony rather than permanent alimony without any legal or evidentiary basis. We affirm the imputation of income and the denial of the motion for fees and costs. We reverse the alimony award, however, and remand for specific factual findings or other appropriate relief.
I. Facts and Procedural History
At the time of the January 2012 amended dissolution judgment, the former wife was fifty-two years old and the former husband was fifty-four. The trial court found that the parties had a very modest lifestyle during the marriage, in the course of which the former husband was employed outside the home and served as the breadwinner, while the former wife was the homemaker and primary caregiver to the children, who are now adults. Although the former husband repeatedly urged the former wife to seek outside employment to supplement his income, she did not do so on any regular basis. Her last job outside the home ended in 1993, after which she earned no income from employment.
The court heard the testimony of Dr. Edwards, a family practice physician who is not the former wife’s primary care doctor. After performing a physical examination of the former wife, the doctor found signs and symptoms of carpal tunnel syndrome in both wrists, depression, and a shaking condition known as “essential tremor,” which is a physical and nerve disorder. Dr. Edwards opined that the former wife is unable to perform any work involving repeated lifting of twenty pounds or more.
*287 The former wife underwent a personal interview and vocational evaluation with Lisa Hellier, who was accepted as a vocational expert. Hellier testified that the former wife explained her personal history, medical background,, and physical limitations. With this information, Hellier concluded that the former wife did not have permanent work restrictions. Hellier conducted a labor market survey and prepared a vocational evaluation report. In formulating her conclusions, Hellier accounted for the former wife’s eleventh-grade level of education and her relative lack of work experience outside the home. Test results indicate that the former wife functions at a twelfth-grade level and can pass the G.E.D. Hellier opined that without a high-school degree, the former wife could obtain employment in Jacksonville earning $15,196.00 annually.
Earning a G.E.D. and receiving additional vocational rehabilitative counseling and training skills would enhance the former wife’s employability. Hellier opined that if she obtains a G.E.D. and receives skills training in using computers and sophisticated telephone systems, the former wife can secure full-time employment earning between $15,000.00 and $20,000.00 a year. The prospective available entry-level jobs included full-time, sedentary positions working as a receptionist or a hotel front desk agent and requiring occasional lifting of up to ten pounds. Free and low-cost vocational assistance is available for displaced homemakers.
The trial court found that the former wife was voluntarily unemployed and had been so throughout the marriage. The court determined that although the former wife qualified for several jobs that would pay $15,000.00 to $17,000.00 a year, she had made no effort to secure work.
The former husband’s employer is BAE Systems. In his April 2011 amended financial affidavit, he listed his monthly gross salary or wages as $5,249.92 and his 2009 gross income as $68,000.00. After deducting taxes, health insurance, and temporary support, the former husband listed his net monthly income as $2,839.01. In the amended final judgment, the court listed the former husband’s gross monthly income as $4,139.00, without explaining the discrepancy between this figure and the substantially higher amount listed in the financial affidavit.
The court evenly distributed the marital assets and liabilities. The value of the marital residence was $80,000.00, subject to a $2,000.00 loan for roof repairs/replacement that will be repaid from the proceeds of the sale of the home. The parties owned two motor vehicles. After the dissolution, the parties’ main source of money was the employee savings and profit-sharing plan in the amount of $161,181.99.
The former wife stated her monthly need as $4,100.00, an amount the trial court deemed unrealistic. Given the former wife’s voluntary unemployment status, the court imputed income to her in the approximate amount of $15,000.00 annually. The court found that the former wife’s current actual need was $2,000.00 monthly, which the court awarded as bridge-the-gap alimony for twenty-four months. For the period beyond those twenty-four months, the court determined that the former wife would need, and the former husband had the ability to pay, $700.00 a month for durational alimony for a period not to exceed the twenty-seven-year marriage. Accounting for the equitable distribution, the court ordered each party to pay his or her own attorney’s fees and costs (excepting the $9,600.00 the court had previously ordered the former husband to pay toward the former wife’s temporary fees and costs).
*288 II. Law & Analysis
A. Imputation of Income
For alimony purposes, trial courts can impute income to a voluntarily unemployed or underemployed spouse in determining the parties’ earning capacities, sources of income, and financial circumstances. See § 61.08(2)(e), (i), (j), Fla. Stat. (2011); Rabbath v. Farid, 4 So.3d 778, 781-82 (Fla. 1st DCA 2009); Freilich v. Freilich, 897 So.2d 537, 540 (Fla. 5th DCA 2005). The burden of proof is on the party seeking to impute income to the other spouse. Burkley v. Burkley, 911 So.2d 262, 269 (Fla. 5th DCA 2005). Where a court imputes income to a spouse, the reviewing court must determine whether competent substantial evidence supports this decision. Leonard v. Leonard, 971 So.2d 263, 266 (Fla. 1st DCA 2008).
Before the court can impute income, however, it “must conclude that the termination of income was voluntary” and “must determine whether any subsequent underemployment ‘resulted from the spouse’s pursuit of [her] own interests or through less than diligent and bona fide efforts to find employment paying income at a level equal to or better than that formerly received.’ ” Leonard, 971 So.2d at 267 (quoting Schram v. Schram, 932 So.2d 245, 249-50 (Fla. 4th DCA 2005)). The trial court must make specific findings regarding the source and amount of imputed income, which must be based on evidence of “employment potential and probable earnings based on history, qualifications, and prevailing wages.” Schram, 932 So.2d at 250; see Griffin v. Griffin, 993 So.2d 1066, 1067 (Fla. 1st DCA 2008).
The former husband presented evidence that would allow income to be imputed to the former wife. To explain her failure to seek outside employment over the years, the former wife contended that her debilitating, progressive, and observable medical conditions rendered her unable to work full-time. In weighing this evidence, the trial court deemed it relevant that the former wife.claimed to have disabling conditions, yet she never applied for social security or disability. In this record, no physician has found the former wife to be medically disabled. To the substantial extent that these medical problems are external and observable, the trial judge had a superior vantage point to assess the former wife’s demeanor and physical circumstances. See Kuvin v. Kuvin, 442 So.2d 203, 205-06 (Fla.1983); Severs v. Severs, 426 So.2d 992, 994-95 (Fla. 5th DCA 1983) (noting the advantages of the trial court’s first-hand observations in exercising its discretion in family law proceedings). Competent substantial evidence supports the findings that without any additional credentials, the former wife can earn $15,196.00 annually in available jobs that will accommodate her medical limitations. After receiving vocational skills training and rehabilitation and earning a G.E.D., the former wife will be able to earn between $15,000.00 and $20,000.00 a year in suitable jobs that are available. Because the record supports the imputation of income, we affirm this part of the amended final judgment.
B. Alimony
The former wife had the burden to prove her actual need and the former husband’s ability to pay alimony. Demont v. Demont, 67 So.3d 1096, 1101 (Fla. 1st DCA 2011). The trial court was required to make specific factual findings regarding these factors. § 61.08(2), Fla. Stat. (2011); Walker v. Walker, 85 So.3d 553, 554 (Fla. 1st DCA 2012). After the court determined that the former wife needs alimony and the former husband is able to pay, *289 subsection (2) required the court to consider all the relevant factors enumerated therein in determining the proper type and amount of alimony. § 61.08(2)(a)-(j).
The Legislature has recognized that some spouses need transitional or “bridge-the-gap” alimony. See § 61.08(5), Fla. Stat. (2011). The trial court heard evidence that the former wife will need a year or more to acquire the credentials that will render her more marketable in the workplace. Assessing her actual need as $2,000.00 monthly, the court awarded this amount in bridge-the-gap alimony for twenty-four months. Durational alimony, which is authorized by section 61.08(7), Florida Statutes (2011), is “an intermediate form of alimony between bridge-the-gap and permanent alimony.” Nousari v. Nousari, 94 So.3d 704, 706 (Fla. 4th DCA 2012). The court determined that after twenty-four months, the former wife would need only $700.00 per month, an amount it awarded as durational alimony. The court made no factual findings explaining why it chose to award durational alimony rather than permanent periodic alimony.
It is well established that the decision to award alimony, of a certain type and in a certain amount, lies within the broad discretion of the trial court. See Canakaris v. Canakaris, 382 So.2d 1197, 1201-03 (Fla.1980); Demont, 67 So.3d at HOT. An appellate court will not disturb an alimony award where competent substantial evidence supports the award and the trial court complies with the governing law. However, we review de novo whether the trial court correctly applied the law to the facts of record. Jensen v. Jensen, 824 So.2d 315, 322 (Fla. 1st DCA 2002). The former wife argues that the factual record and the law do not support the refusal to award permanent alimony. We agree that a remand is necessary because the lack of required findings of fact renders us unable to review the alimony issue in a meaningful way. See Ondrejack v. Ondrejack, 839 So.2d 867, 871 (Fla. 4th DCA 2003).
The Legislature has set out several considerations for the trial court in determining whether to award permanent alimony. In pertinent part, the statute states:
Permanent alimony may be awarded to provide for the needs and necessities of life as they were established during the marriage of the parties for a party who lacks the financial ability to meet his or her needs and necessities of life following a dissolution of marriage. Permanent alimony may be awarded following a marriage of long duration if such an award is appropriate upon consideration of the factors set forth in subsection (2)- In awarding permanent alimony, the court shall include a finding that no other form of alimony is fair and reasonable under the circumstances of the parties. An award of permanent alimony terminates upon the death of either party or upon the remarriage of the party receiving alimony. An award may be modified or terminated based upon a substantial change in circumstances or upon the existence of a supportive relationship in accordance ■with s. 61.14.
§ 61.08(8), Fla. Stat. (2011) (as amended by chapter 2011-92, §§ 79-80, Laws of Florida, effective July 1, 2011, and applying to all initial awards entered after that date); Margaretten v. Margaretten, 101 So.3d 395, 396 & n. 1 (Fla. 1st DCA 2012). The parties were married for twenty-seven years. It is a rebuttable presumption that “a marriage having a duration of 17 years or greater” is a long-term marriage. § 61.08(4), Fla. Stat. (2011); Welch v. Welch, 22 So.3d 153, 155 (Fla. 1st DCA 2009) (revised opinion).
*290 In seeking a remand of the alimony issue, the former wife contends that the former husband failed to overcome the initial presumption favoring an award of permanent alimony for a marriage of this long duration, and that the court’s substantial error in calculating the former husband’s gross monthly income skewed (in his favor) the analysis of his ability to pay. She argues that $700.00 a month is an arbitrary, unsupportable reduction that is insufficient to maintain her marital standard of living or to meet her financial needs. The former wife suggests that in awarding bridge-the-gap alimony in the amount of $2,000.00 a month, the court implicitly determined that the former husband was able to pay that amount, and nothing in the record indicated his financial position would change at the end of twenty-four months. She asserts that even after the imputation of income, a disparity exists between the parties’ income-earning capacity and that her need remains. See Sellers v. Sellers, 68 So.3d 348, 350 (Fla. 1st DCA 2011). Finally, she contends that the evidence regarding their marital assets belies the finding that the parties lived a very modest marital lifestyle and struggled to survive financially.
“Permanent alimony may be awarded following a marriage of long duration.” § 61.08(8). In the dissolution judgment, the court failed to address the initial rebuttable presumption or explain why it does not apply to this case. The court did not explain why it reduced the monthly amount from $2,000.00 to $700.00 or why durational alimony, rather than permanent alimony, is appropriate. The former wife is entitled on remand to a correct determination of the former husband’s monthly income for purposes of assessing his ability to pay alimony, and to findings addressing the rebuttable presumption and explaining why it was overcome. See Sellers, 68 So.3d at 350-51 (reversing and remanding for the trial court to make findings regarding the denial of permanent alimony).
C. Attorney’s Fees and Costs
We review an order granting or denying a motion for attorney’s fees and costs for an abuse of discretion. Kelly v. Kelly, 925 So.2d 364, 369 (Fla. 5th DCA 2006). The general standard for awarding attorney’s fees and costs is the requesting spouse’s financial need and the other spouse’s ability to pay. § 61.16(1), Fla. Stat. (2011); Galligar v. Galligar, 77 So.3d 808, 812-13 (Fla. 1st DCA 2011). “The purpose of this section is to ensure that both parties will have a similar ability to obtain competent legal counsel.” Rosen v. Rosen, 696 So.2d 697, 699 (Fla.1997). A trial court must determine the ultimate issue of fees and costs after the dissolution proceeding concludes, based on the parties’ respective financial circumstances. See Kelly, 925 So.2d at 368-69.
The court ordered the former husband to pay $9,600.00 toward the former wife’s temporary attorney’s fees and costs. Concluding that the equitable distribution of property enabled the former wife to pay, the court denied her motion for an award of additional fees and costs. We find no abuse of discretion in denying the former wife’s motion. For the benefit of the trial court, however, we note that if it alters the parties’ respective financial circumstances on remand, the court may revisit the motion for attorney’s fees and costs and account for any changes that would affect the outcome under section 61.16. See Sellers, 68 So.3d at 351; Perez v. Perez, 882 So.2d 537, 539 (Fla. 3d DCA 2004).
We AFFIRM the amended final judgment of dissolution of marriage in part, REVERSE it in part, and REMAND with *291 instructions to make specific findings relating to the initial rebuttable presumption and the appropriate type and amount of alimony.
BENTON, C.J., and ROBERTS, J., concur.