IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

JAMES S. WINDER, Former
Husband,

       Appellant,

v.

DIAN A. WINDER, Former
Wife,

       Appellee.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D13-4658

Opinion filed December 12, 2014.

An appeal from the Circuit Court for Alachua County.
Elzie S. Sanders, Judge.

Justin D. Jacobson of the Law Office of Richard M. Knellinger, P.A., Gainesville, for Appellant.

J. Mark Dubose, Jr. and Karen S. Yochim of Alba & Dubose P.A., Gainesville, for Appellee.

THOMAS, J.

      Appellant ("the Husband") appeals the final judgment of dissolution of marriage, raising three issues on appeal. The Husband asserts that the trial court erred in: (1) including funds in the equitable distribution scheme that the Husband obtained from two marital retirement accounts, when these funds were used for the

payment of living expenses and temporary support, asserting there was no evidence that these funds were dissipated as a result of misconduct; (2) awarding the Wife permanent alimony without proper support for the award; and (3) awarding the Wife a portion of her attorney's fees without proper support for the award. We reverse the final judgment and remand for further proceedings consistent with this opinion.

The parties were married in 2000, and the Husband filed his petition for dissolution in 2011. At the time of trial, the Husband was 59 years old and the Wife was 56 years old. The parties had no minor children from the marriage.

*Equitable Distribution*

In its final judgment, the trial court made limited findings as to equitable distribution. The trial court found that the parties had two marital retirement accounts totaling $23,187.07, and during the pendency of the case, the Husband liquidated these accounts for payment of his living expenses, temporary alimony, and both parties' health insurance premiums. The final judgment does not include any determination that these funds were dissipated by the Husband's intentional misconduct; instead, it found that the Wife was entitled to half of the liquidated total and awarded her $11,593.54. As to other marital assets, the final judgment simply noted that the parties had divided them in an equitable manner, but does not specify these marital assets or their values. The final judgment also provided that

2

each party entered the marriage with non-marital assets, but again provided no specific findings.

The final judgment further found that each party had accumulated individual debts, without specifying these debts, and concluded that each party was solely responsible for their own debts. The Husband challenges only the portion of the equitable distribution scheme finding the Wife entitled to half of the two marital retirement accounts, asserting that these two dissipated assets should not have been taken into consideration in the equitable distribution.

The trial court's ruling on equitable distribution is reviewed for an abuse of discretion. Stough v. Stough, 18 So. 3d 601 (Fla. 1st DCA 2009). "As a general proposition, it is error to include assets in an equitable distribution scheme that have been diminished or dissipated during the dissolution proceedings." Roth v. Roth, 973 So. 2d 580, 584 (Fla. 2d DCA 2008) (citing Cooper v. Cooper, 639 So. 2d 153, 155 (Fla. 2d DCA 1994); Bush v. Bush, 824 So. 2d 293, 294 (Fla. 4th DCA 2002); Knecht v. Knecht, 629 So. 2d 883, 886 (Fla. 3d DCA 1993)). "However, an exception to this general proposition exists when misconduct during the dissolution proceedings results in the dissipation of a marital asset. In that case, the misconduct may serve as a basis for assigning the dissipated asset to the spending spouse when calculating equitable distribution." Id. at 584-85 (citing Levy v. Levy, 900 So. 2d 737, 746 (Fla. 2d DCA 2005); Romano v. Romano, 632

3

So. 2d 207, 210 (Fla. 4th DCA 1994)).

In Walker v. Walker, 85 So. 3d 553, 555 (Fla. 1st DCA 2012), this court held:

> [I]n order to determine that a spouse has dissipated marital assets, the trial court must make "a specific finding of intentional misconduct based on evidence showing that the marital funds were used for one party's 'own benefit and for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown.'" Belford v. Belford, 51 So.3d 1259, 1260–61 (Fla. 2d DCA 2011) (quoting Roth v. Roth, 973 So.2d 580, 585 (Fla. 2d DCA 2008)). "Misconduct is not shown by 'mismanagement or simple squandering of marital assets in a manner of which the other spouse disapproves.'" Id. (quoting Roth, 973 So.2d at 585 (stating there "must be evidence of spending spouse's intentional dissipation or destruction of the asset")).

See also Annas v. Annas, 29 So. 3d 1209 (Fla. 1st DCA 2010) (holding that nothing in the judgment suggested that the former wife used the money she withdrew from the parties' bank account for anything other than reasonable living expenses pending resolution of the case and the trial court erred when it assigned the money withdrawn as part of the scheme of equitable distribution).

Here, the trial court did not find any misconduct on the part of the Husband in the dissipation of these two assets. The uncontradicted evidence shows that the dissipated funds were used to pay marital expenses while the dissolution was pending, including temporary support for the Wife, and because there is no evidence that the Husband engaged in misconduct in using these funds, the trial court abused its discretion in including these dissipated funds in the equitable

4

distribution scheme. On remand, the trial court shall exclude the funds received from these two retirement accounts from the equitable distribution scheme.

*Alimony*

As to alimony, the trial court took "judicial notice" of the temporary support order and adopted those findings of fact as to the Wife's needs and the Husband's ability to pay, and concluded that the parties' financial circumstances had not materially changed since the temporary support hearing. The findings of fact in the temporary support order found that the Wife quit her job of twenty years as a senior secretary, with the Husband's encouragement and support, just before the parties married in 2000. The Wife did not obtain employment again until 2006 when she obtained a job with the Gainesville Police Department as a technician. She remained in this job for approximately a year and a half until she was no longer able to perform the physical demands of the job. Regarding her health, the temporary support order found that the Wife suffered from hip problems since birth, she had an unsuccessful hip replacement surgery in 2010, and she continued to suffer from significant pain and an uneven gait that required her to wear a leg brace when walking long distances. Additionally, the temporary support order found that she suffered from vision problems that impacted her ability to read and use the computer for more than short periods of time, and she could no longer perform secretarial-type job duties.

5

With respect to the Husband, the temporary support order found that he was a manufacturing engineer but currently unemployed after he was terminated from his job, where he earned over $100,000 a year, after it was discovered that he submitted a resume in his job application years earlier that included a false statement that he had a college degree when he was two credits short of the actual degree. Although the court found this to be a willful act by the Husband, it concluded that the act was not done during the course of the proceedings for the purpose of losing his ability to pay support to the Wife. The temporary support order also found that the Husband had been actively seeking employment. It further found that the Husband had moved out of his apartment, as he could not afford the rent, and was currently residing with his girlfriend in a house that was going through foreclosure, thus neither he nor his girlfriend were paying a mortgage payment or rent.

In addition to the findings of fact adopted from the temporary support order, the trial court also found in the final judgment that the Husband had renewed his general contractor's license and had earned $2,500 in gross income from a few jobs, but the Husband considered this to be a temporary position. The trial court found that the Husband was making a good faith effort to find employment as a manufacturing engineer. The court ordered the Husband to pay $750 a month in permanent alimony and an additional $400 per month in permanent periodic

6

alimony for the Wife's health insurance premiums.

The trial court's award of permanent alimony is reviewed for an abuse of discretion. See Ondrejack v. Ondrejack, 839 So. 2d 867, 870 (Fla. 4th DCA 2003). "In all dissolution actions, the court shall include findings of fact relative to the factors enumerated in subsection (2) supporting an award or denial of alimony." § 61.08(1), Fla. Stat. (2011). Pursuant to Section 61.08(2), Florida Statutes, when the trial court is determining whether to award alimony, it "shall first make a specific factual determination as to whether either party has an actual need for alimony or maintenance and whether either party has the ability to pay alimony or maintenance." If the court determines that one party has a need for alimony and the other has the ability to pay, then the court is required to consider all relevant factors, including, but not limited to, the factors listed within section 61.08(2)(a)-(j). See § 61.08(2), Fla. Stat. (2011).

"The purpose of permanent periodic alimony is not to divide future income to establish financial equality." Rosecan v. Springer, 845 So. 2d 927, 929 (Fla. 4th DCA 2003). In this case, there is no presumption for or against permanent alimony, as the parties' 10-year marriage was a "grey-area" marriage. See Sellers v. Sellers, 68 So. 3d 348, 350 (Fla. 1st DCA 2011) (noting that marriages of less than 17 years in duration are "grey-area" marriages in which there is no presumption for or against permanent alimony). Permanent alimony may be

awarded following a marriage of moderate duration, if such an award is appropriate based upon clear and convincing evidence after consideration of the factors set forth in section 61.08(2). § 61.08(8), Fla. Stat. (2011). Accordingly, the factual findings are particularly important in this case. See Justice v. Justice, 80 So. 3d 405, 408 (Fla. 1st DCA 2012). "A trial court's failure to make adequate factual findings in a final judgment of dissolution of marriage is typically reversible error because, in most circumstances, this failure precludes meaningful appellate review." Winney v. Winney, 979 So. 2d 396, 400 (Fla. 1st DCA 2008).

The final judgment ordered the Husband to pay $750 per month in permanent periodic alimony, and as additional permanent periodic alimony ordered the Husband to pay the Wife's health insurance premium up to a total obligation of $400 per month. The final judgment, however, failed to include sufficient factual findings as required by section 61.08 to allow for a meaningful review of this award. Although the final judgment does contain some findings regarding both parties' unemployment and the Wife's numerous medical issues that prevent her from working, the final judgment lacks clear findings as to how it reached the alimony award. The trial court did not make any findings regarding the Wife's current living expenses and whether she had any other sources of income to meet her expenses, including income from marital or non-marital assets. Additionally,

as conceded by the Wife, the final judgment does not contain sufficient findings as to the Husband's ability to pay.

The final judgment also lacks sufficient factual findings that take into consideration the factors under section 61.08(2), including but not limited to a lack of written findings as to the financial resources of each party, the value of marital and non-marital assets and liabilities distributed to each, the standard of living established during the marriage, the contribution of each party to the marriage, and the sources of income available to either party. Permanent alimony may very well be appropriate under the circumstances of the case; however, the trial court's failure to make adequate factual findings to establish that the Wife had a need, the Husband had the ability to pay, and that the award of alimony was appropriate after considering all the relevant factors under section 61.08(2), was error.

In addition, the alimony award must also be reversed because the trial court failed to expressly find that no other form of alimony would be appropriate before awarding permanent alimony. "In awarding permanent alimony, the court shall include a finding that no other form of alimony is fair and reasonable under the circumstances of the parties." § 61.08(8), Fla. Stat; see also Margaretten v. Margaretten, 101 So .3d 395, 396 (Fla. 1st DCA 2012) (concluding that the trial court's failure to make statutory findings regarding the lack of any other fair and reasonable form of alimony than permanent alimony was reversible error).

9

Thus, we reverse the award of permanent alimony to the Wife and remand with instructions to either make sufficient findings of fact to enable this court to determine the appropriateness of the permanent periodic alimony award, or to consider another form of alimony which would be supported by the record. On remand, the trial court shall also take into consideration the effect of this court's holding regarding the exclusion of the funds from the two dissipated retirement accounts, as it impacts the financial resources of both parties. See Collinsworth v. Collinsworth, 624 So. 2d 287, 291 (Fla. 1st DCA 1993) (holding that permanent periodic alimony award had to be reversed because the decision "effectively vacated the entire plan of equitable distribution and alimony support fashioned by the circuit court").

The Husband's current ability to pay alimony is at issue. Upon remand, should the trial court find it is faced with a situation where the Wife has a clear need for permanent alimony, but it is established that the Husband does not have the current ability to pay, we note that a nominal award of permanent alimony would preserve the trial court's jurisdiction to revisit this matter, until there is a substantial change in the parties' respective financial circumstances. See Gergen v. Gergen, 48 So. 3d 148, 150 (Fla. 1st DCA 2010) (holding it was error to defer awarding or denying permanent periodic alimony on ground husband did not have present ability to pay); Biskie v. Biskie, 37 So. 3d 970, 973 (Fla. 1st DCA 2010)

10

(holding that an award of nominal permanent alimony was appropriate where the wife established need and the husband did not have the current ability to pay, but his financial situation was likely to change in the future and such an award would permit the wife to pursue an increase in permanent alimony should the husband's income rebound); Schmidt v. Schmidt, 997 So. 2d 451, 454 (Fla. 2d DCA 2008) ("[W]hen one party is entitled to permanent periodic alimony but the other spouse has no current ability to pay, the trial court should award a nominal sum of permanent periodic alimony, which will give the court jurisdiction to reconsider the award should the parties' financial circumstances change."). If necessary, the trial court may take additional evidence in order to make the required factual findings in support of its determination. See Winney, 979 So. 2d at 402.

*Attorney's Fees*

With respect to attorney's fees, the trial court found that the Wife had accumulated $24,480 in fees and costs, and her counsel's rate and hours were reasonable. The final judgment also found that the Wife had a need for a contribution to her fees, the Husband had the ability to pay, and ordered the Husband to pay $8,100 toward the Wife's attorney's fees. The Husband argues that this court should reverse this attorney's fee award, as the trial court failed to make specific findings as to the Wife's need, the Husband's ability to pay, and the reasonableness of the Wife's attorney's fees and costs. The Wife commendably

11

concedes that the findings were insufficient as to the Husband's ability to pay.

Based upon the analysis above, this court cannot accurately evaluate if the Husband is truly in the best financial position to pay for a portion of the Wife's attorney's fees. As we are reversing a portion of the equitable distribution, and the award of alimony for reconsideration, we also reverse the order on attorney's fees and "remand to the trial court for reconsideration in light of the changes in the parties' relative financial resources following the trial court's ultimate ruling." Walker, 85 So. 3d at 555 (quoting Segall v. Segall, 708 So. 2d 983, 989 (Fla. 4th DCA 1998)).

We do not comment on the merits of the fee award. If, however, on remand, the trial court again orders the Husband to pay a portion of the Wife's attorney's fees, it must base its award "on the need of the party seeking the fees and the ability of the other party to pay the fees." Giovanini v. Giovanni, 89 So. 3d 280, 282 (Fla. 1st DCA 2012) (citing Jones v. Jones, 671 So. 2d 852, 855 (Fla. 5th DCA 1996)). "The trial court must also make specific findings as to the hourly rate, the number of hours reasonably expended, and the appropriateness of reduction or enhancement factors." Id. (citing Davis v. Davis, 613 So. 2d 147, 148 (Fla. 1st DCA 1993)). "A dissolution order directing a party to pay the other party's fees and costs, which recites simply that the total amounts 'are reasonable time spent and hourly rates,' is insufficient under [Florida Patient's Compensation Fund v.

12

Rowe, 472 So. 2d 1145, 1150 (Fla. 1985)]." Norman v. Norman, 939 So. 2d 240, 242 (Fla. 1st DCA 2006) (citing Keeley v. Keeley, 899 So. 2d 387, 389 (Fla. 2d DCA 2005).

We reverse the final judgment of dissolution of marriage and remand to the trial court for further proceedings consistent with this opinion.

REVERSED and REMANDED for further proceedings.

ROBERTS and ROWE, JJ., CONCUR.