IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

JOHN THOMAS GOTRO, FORMER HUSBAND,

Appellant,

v.

CATHERINE SUZANNE GOTRO, FORMER WIFE,

Appellee.

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING AND DISPOSITION THEREOF IF FILED

CASE NO. 1D16-1863

_____/

Opinion filed May 5, 2017.

An appeal from the Circuit Court for Alachua County.
Victor L. Hulslander, Judge.

Brian P. North of Kenny Leigh & Associates, Pensacola, for Appellant.

Anderson E. Hatfield, Gainesville, for Appellee.

PER CURIAM.

In this appeal from a final judgment of dissolution of marriage, the former husband raises four issues: (I) the trial court abused its discretion when it awarded $2,500 in permanent alimony to the former wife; (II) the trial court abused its

discretion in creating equitable distribution; (III) the trial court abused its discretion when it ordered the former husband to pay all of the former wife's attorney's fees and costs; and (IV) the trial court abused its discretion when it ordered the former husband to maintain life insurance on the alimony award. Our reversal of the equitable distribution scheme necessitates reversal on Issues I and III as well. We also reverse Issue IV and remand for further proceedings consistent with this opinion.

The parties were married for approximately thirty-nine years and share four children, none of whom were dependent at the time of dissolution. It was undisputed that the former husband was the bread-winner and had a substantially larger earning potential than the former wife. The former husband had several bank accounts, most of which were properly considered to be marital assets by the trial court. Of particular significance were two BBVA Compass Bank accounts. The former wife submitted evidence that the combined balance of the two BBVA accounts was $8,345.00 at the time the petition for dissolution was filed in May 2015. However, at the final hearing, the former husband provided unrebutted testimony that the combined value of the two BBVA accounts had been significantly reduced to $2,432.00. He further testified that these two accounts had been used for his living expenses and to pay bills associated with the marital home. The former husband asked the trial court to use the balance of the accounts at the date of the final hearing

2

as opposed to the date of filing. The trial court denied the request and used the balances of the accounts at the time of filing, initially dividing the $8,345 combined value of the two accounts equally between the parties. The trial court later redistributed the value assigned because the former wife was to forgo receipt of her cash-out share from the two BBVA accounts ($4,172.50) along with her cash-out from two other assets. This led to the trial court assigning an equalizer payment to the former wife in the amount of $8,612.99. The former husband argues the trial court abused its discretion by including the value of the depleted BBVA accounts, which resulted in a disparate equalizer payment being assigned in favor of the former wife.

In equitable distribution under section 61.075(7), Florida Statutes (2015), the trial court may select a valuation date of the marital asset that the court determines in its discretion to be "just and equitable under the circumstances." Different assets may be valued as of different dates in the trial court's discretion. § 61.075(7), Fla. Stat. (2015). However, "[a]s a general proposition, it is error to include assets in an equitable distribution scheme that have been diminished or dissipated during the dissolution proceedings." Winder v. Winder, 152 So. 3d 836, 838 (Fla. 1st DCA 2014) (quoting Roth v. Roth, 973 So. 2d 580, 584 (Fla. 2d DCA 2008)). The exception is when a parties' misconduct during the proceedings results in dissipation of the asset, which misconduct may serve as a basis for assigning the asset to the

3

spending spouse. <u>Winder</u>, 152 So. 3d at 838. However, assignment due to dissipation must be based on the trial court's "specific finding of intentional misconduct based on evidence showing that the marital funds were used for one party's 'own benefit and for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown.'" <u>Id.</u> (quoting <u>Walker v. Walker</u>, 85 So. 3d 553, 555 (Fla. 1st DCA 2012)).

The former wife lodged general allegations of misconduct, but they were not directly related to the funds in the two BBVA accounts. More importantly, the trial court made no findings of misconduct. The former husband's undisputed testimony was that these two accounts were used for his living expenses and to pay bills associated with the home. The former husband was also paying the former wife temporary alimony and temporary attorney's fees as well as a majority of the marital expenses during the pendency of the proceedings. There was no evidence of misconduct other than generalized allegations, and the undisputed testimony showed the money was diminished to pay at least some marital expenses during the proceedings. We agree with the former husband that, absent a finding of misconduct, it was error to utilize the value of these two BBVA accounts before dissipation. We reverse the equitable distribution portion of the final order and remand for further proceedings. Because the error in equitable distribution of the

4

two BBVA accounts was integral to the calculation of the equalizer payment, that portion of the final order is also reversed and remanded.

The former husband also argues that the trial court erred in awarding the former wife $2,500 in permanent alimony. As to the trial court's decision to award permanent alimony, the parties' thirty-nine year marriage was of such a duration that the former wife was entitled to an initial rebuttable presumption favoring permanent alimony. See § 61.08, Fla. Stat. (2015) (a long-term marriage entitled to the rebuttable presumption is defined as a marriage having a duration of seventeen years or longer). The trial court's order determined that the former wife had a need for $2,500 per month in alimony and carefully considered all of the factors in section 61.08(2)(a)-(i), Florida Statutes (2015). Factors weighing in favor of the former wife's need were the parties' high middle-class standard of living during the marriage and the former wife's inability, due to age, health, and education, to support herself in a fashion consistent with her previous standard of living. After the divorce, the former wife would also have to pay her living expenses and secure health insurance as the former husband had paid the majority of expenses during the marriage. In determining the former husband's ability to pay, the trial court found his income was approximately 3.67 times greater than the former wife's earned income. The trial court's finding that the former husband had the ability to pay permanent alimony was also supported by the record. We find no error in the trial

5

court's decision to award permanent alimony to the former wife. See Broemer v. Broemer, 109 So. 3d 284, 289 (Fla. 1st DCA 2013) ("An appellate court will not disturb an alimony award where competent substantial evidence supports the award and the trial court complies with the governing law."). However, because we are reversing and remanding the equitable distribution portion of the final order, the alimony award is also remanded for recalculation. See Watson v. Watson, 124 So. 3d 340, 343 (Fla. 1st DCA 2013) (finding that the reversal and remand of the equitable distribution portion necessitated remand of the alimony award). We also remand the trial court's award of attorney's fees in Issue III as the fee award is impacted by the reversal of the equitable distribution award as well. See Nolan v. Nolan, 188 So. 3d 977, 978 (Fla. 1st DCA 2016) (reversal of equitable distribution scheme necessitated reversal and remand of alimony and attorney's fees portions of the final judgment as well).

Finally, in Issue IV, the former husband argues that the trial court erred in ordering him to maintain a $100,000 life insurance policy to secure the alimony award. The trial court had the authority to require the former husband to maintain a life insurance policy with the former wife as beneficiary in order to secure the alimony payment. See § 61.08(3), Fla. Stat. (2015); Therriault v. Therriault, 102 So. 3d 711, 713 (Fla. 1st DCA 2012). In Therriault, this Court held that, in so requiring, the trial court "must make specific evidentiary findings as to the availability and cost

6

of insurance, the [former husband's] ability to pay, and the special circumstances that warrant such security." Id. (quoting Kotlarz v. Kotlarz, 21 So. 3d 892, 893 (Fla. 1st DCA 2009)). Special circumstances that warrant this security include, among other things: a spouse left in "dire financial straits" after the obligor spouse's death, a supported spouse with limited earning capacity, an obligor spouse in arrears on support obligations, and cases where the obligor spouse agreed on the record to secure an award with a life insurance policy. Therriault, 102 So. 3d at 713-14. The amount of insurance must also be related to the extent of the obligation being secured. Id. Although the life insurance policy was preexisting and there was testimony that it cost the former husband approximately $213 per month, the trial court failed to make any specific evidentiary findings as to the former husband's ability to pay and the special circumstances that warranted such security. While there may be a basis in the record for such a finding, on remand, the trial court should include the required specific findings to require the security.

REVERSED and REMANDED.

ROBERTS, C.J., ROWE and WINOKUR, JJ., CONCUR.