IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

WILLIAM MONCRIEF WOOD,
JR., former husband,

     Appellant,

v.

PEGGY HODGE WOOD,
former wife,

     Appellee.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D13-5778

Opinion filed December 17, 2014.

An appeal from the Circuit Court for Clay County.
Mark J. Borello, Judge.

Denise Watson of Law Office of Denise Watson, Jacksonville and William S. Graessle of William S. Graessle, P.A., Jacksonville, for Appellant.

Michael J. Korn of Korn & Zehmer, P.A., Jacksonville, for Appellee.

PER CURIAM.

     The final judgment modifying the final judgment of dissolution is challenged on appeal by the former husband's direct appeal and the former wife's cross-appeal. We reverse portions of the modification judgment as explained below, but otherwise affirm.

     The parties' eleven-year marriage was dissolved by final judgment entered

June 22, 2010. At the time the final judgment was entered, both parties were employed by William K. Wood Co., a business solely owned by former husband and inherited from his father. The former wife's annual salary was approximately $50,000.00. The final judgment incorporated a marital settlement agreement which addressed all pertinent matters, including child support and alimony. Based on the agreement, the final judgment ordered the former husband to pay alimony of $5000.00 per month, child support of $5000.00 per month—both payments to be secured by insurance policies on the former husband's life—and to continue the former wife's health insurance until she obtained new employment which provided this benefit. The former wife's employment at Wood Co. ended some time in 2012.

On June 21, 2012, the former husband petitioned to modify the final judgment. He alleged that due to a downturn in his company's revenues, his financial circumstances had substantially changed since 2010. Former husband sought reduction of his alimony and child support payments, elimination of his obligation to secure these payments with insurance, and termination of his obligations to provide the former wife with health insurance and pay private school tuition for his child.

In response, the former wife filed her motion for contempt and enforcement and alleged that by July, 2012, the former husband's arrearages for support totaled

2

$117,000.00. She also asserted that the former husband's decrease in income and his alleged inability to afford life insurance were willful, and that the child's enrollment in public school was only temporary. The former wife's amendment and supplement to her motion for contempt, filed August 12, 2013, alleged arrearages in the amount of $179,727.65 as of that date.

After mediation, discovery, and a bench trial, the court entered the modification judgment now on appeal.

*Alimony*. The court specifically relied on the financial affidavits filed by the former husband in May, 2010 and April, 2013 respectively, and found a 9% decrease in the former husband's income. Accordingly, the court reduced the former husband's alimony obligation by 9%, from $5000 per month to $4550 per month. On appeal, the former husband argues that the reduction was inadequate because the gross profits of his company fell by 60% between 2010 and 2013. However, he failed to show that the trial court abused its discretion by relying on his sworn financial affidavits, which conformed to form 12.902(c), Florida Family Law Forms, to compare his income—including personal expenses paid for by his company—at the time of the final judgment with his income at the time the modification judgment was entered.

Likewise, the trial court declined to modify the security requirement for the alimony payments and the former husband has shown no abuse of the trial court's

3

discretion on this ruling. However, the order does not specify the amount of life insurance required; thus, on remand, the trial court shall specify an amount for such insurance coverage.

*Health Insurance*. The trial court denied modification of the requirement that former husband continue providing health insurance to the former wife until she obtains employment which includes this benefit. No abuse of discretion is evident on this point. Contrary to the former husband's argument, the former wife's short-lived employment at a new company did not automatically satisfy the terms of the original final judgment's directive that the former husband maintain the health insurance, through his company, until the former wife obtains employment with a health insurance benefit.

*Child Support*. In the modification judgment, the trial court found that because the former wife became employed, but quit the position one month later, her unemployment was "voluntary." See § 61.30(2)(b), Fla. Stat. In addition, the court relied on the former husband's expert witness' testimony regarding the former wife's recent work history and her probable earning range. The court determined that "based on her occupational qualifications and the prevailing earnings in the community," income of $50,000.00 ($4,166.67 per month) would be imputed to the former wife.

The court then considered this imputed income for its determination of child

support, as reflected in a single-page chart entitled "child support guidelines worksheet" attached to the modification judgment. The chart listed the income imputed to the former wife as her "Social Security Taxable Income." The court did not utilize or require the parties to submit form 12.902(e), Florida Family Law Forms. The trial court then found: "Based on the foregoing respective financial positions of the parties and the health insurance costs paid by the Former Husband, the Court finds that the Former Husband does not owe a monthly child support obligation." This modified the former husband's child support obligation from $5000.00 per month to zero.

The former wife's cross-appeal of the elimination of child support is well-taken. As stated in Kozell v. Kozell, 142 So. 3d 891, 894 (Fla. 4th DCA 2014):

> A party moving for modification of child support has the burden of proving the following factors: (1) a substantial change in circumstances; (2) the change was not contemplated at the time of the final judgment of dissolution; and (3) the change is sufficient, material, involuntary, and permanent in nature. Maher v. Maher, 96 So.3d 1022, 1022 (Fla. 4th DCA 2012). "When the original child support amount is based on an agreement by the parties, as here, there is a heavier burden on the party seeking a downward modification." Id.

Generally, "the standard of review governing a trial court's decision to modify child support is abuse of discretion." deLabry v. Sales, 134 So. 3d 1110, 1115 (Fla. 4th DCA 2014) (citations omitted). A trial court's decision to impute income to a parent for purposes of calculating child support obligations is also "reviewed

5

for abuse of discretion." Strassner v. Strassner, 982 So. 2d 1224, 1225 (Fla. 1st DCA 2008).

The trial court abused its discretion by imputing income to the former wife solely because she voluntarily left her new employment after only one month. Section 61.30(2)(b), Florida Statutes, requires imputation of income "to an unemployed or underemployed parent if such unemployment or underemployment is found by the court to be voluntary on that parent's part." However, "restraints on imputation exist in the form of a required two-step analysis." Schram v. Schram, 932 So. 2d 245, 249 (Fla. 4th DCA 2005). The trial court's order contained no particularized findings related to the current job market, the former wife's recent (within the preceding 5 years) work history, occupational qualifications, or the prevailing earnings level in the local community. See Marlowe v. Marlowe, 123 So. 3d 1194 (Fla. 1st DCA 2013) (imputation of income to payee parent for purposes of reducing child support from payor parent reversed due to lack of particularized findings). The court's reliance on the voluntary termination of the former wife's employment fell short of the two-step analysis required to impute income at the former level. "First, the trial court must conclude that the termination was voluntary; second, the court must determine whether the individual's subsequent unemployment or underemployment resulted from the spouse's pursuit of his own interests or through less than diligent and bona fide

efforts to find employment paying income at a level equal to or better than that formerly received." Ensley v. Ensley, 578 So. 2d 497, 499 (Fla. 5th DCA 1991); see also Broemer v. Broemer, 109 So. 3d 284 (Fla. 1st DCA 2013); Leonard v. Leonard, 971 So. 2d 263 (Fla. 1st DCA 2008).

Accordingly, while a parent's motive in voluntarily quitting a job is relevant, it is but one factor in the determination of whether income should be imputed. Even if the parent leaves a job unwisely, ill-advisedly, or motivated by frustration or spite, the voluntary nature of her continued unemployment must be shown with proof that she is not making diligent, bona fide efforts to obtain reemployment. Brown v. Cannady-Brown, 954 So. 2d 1206 (Fla. 4th DCA 2007); Ensley, 578 So. 2d at 499. The order on appeal contains no findings regarding the former wife's diligence or lack thereof in seeking employment in the job market in the community. Accordingly, her imputed income as reflected in the chart/worksheet and relied upon by the trial court was not supported by sufficient evidence.

The chart/child support worksheet indicating that the former husband's net monthly income is $80.60 did not constitute competent, substantial evidence sufficient to support the trial court's elimination of child support. The former husband's net monthly income reported in his family law financial affidavit (form 12.902(c), Florida Family Law Forms) filed in May 2013 shows a net monthly income (line 27) of $4,518.23. The use of the chart in this case and not the Child

7

Support Guidelines Worksheet promulgated in Form 12.902(e), Florida Family Law Forms, is unexplained. Particularly in light of the "heavier burden" on the party seeking a downward modification where the original child support amount was by agreement of the parties, the record in this case simply does not support the modification of child support from $5000.00 per month to $0 and this portion of the modification judgment must be reversed.

Because the trial court's elimination of the security requirement for child support payments was dependent upon its elimination of the child support, the removal of the security requirement for child support is also reversed. On remand, the trial court shall specify an amount for such insurance coverage.

*Arrearages*. The trial court's ruling that "the Former Husband is current in his child support and alimony obligations, and Former Wife's claim that Former Husband is in arrearages is denied" lacks any explanation. There is no indication in the record that the evidence of amounts owed versus payments the former wife received was disputed. Accordingly, this portion of the modification judgment is reversed for additional findings of fact regarding the former husband's compliance with the original judgment's directives regarding alimony and child support payments.

Accordingly, the provisions in the modification judgment eliminating child support and life insurance as security for child support payments and the denial of

8

the former wife's claim for arrearages are REVERSED and REMANDED for further proceedings. In all other respects, the modification judgment is AFFIRMED. If in subsequent proceedings the trial court determines that a modification of child support is justified by a permanent, unanticipated, substantial change in the former husband's financial circumstances, sufficient to meet the heavier burden of proof when the original child support amount is based on an agreement by the parties, calculation of the applicable guidelines child support must be based on the forms promulgated by the Florida Supreme Court. If the trial court determines that income must be imputed to the former wife for child support purposes, such imputation must be supported by sufficient evidence of the voluntariness of her current employment situation as shown by any lack of diligence and bona fide efforts to obtain new employment in the existing market appropriate to her qualifications and experience.

BENTON, VAN NORTWICK, and CLARK, JJ., CONCUR.