# FIRST DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

_____

No. 1D18-915
_____

JENNIFER TISDALE, Former Wife,

    Appellant,

    v.

STEPHEN TISDALE, Former
Husband,

    Appellee.

_____


On appeal from the Circuit Court for Escambia County.
Darlene F. Dickey, Judge.

February 15, 2019


JAY, J.

Jennifer Tisdale, the former wife, seeks reversal of portions of the trial court's "Order on Former Husband's Amended Verified Petition for Modification of Child Support and the Former Wife's Counter-Petition for Modification of Child Support."[*] For the

---

[*] "[O]rders entered in modification proceedings have all of the aspects of final judgments" and, therefore, are "appealable as plenary appeals." *Roshkind v. Roshkind*, 717 So. 2d 544, 544-45 (Fla. 4th DCA 1997); *accord Bucsit v. Bucsit*, 229 So. 3d 430, 431 n.1 (Fla. 1st DCA 2017).

reasons that follow, we reverse on Points I and III, but affirm Point II without further discussion.

I

On September 1, 2015, the parties entered into a marital settlement agreement ("MSA"). Under the terms of the MSA, it was agreed that Stephen Tisdale, former husband, was to pay $6500 per month in child support to the former wife, as calculated under the Child Support Guidelines. The guidelines worksheet was attached to the MSA. It attributed to the former husband a monthly gross income of $68,000, equating to an annual salary of $816,000, not including additional annual income the former husband received from his other business interests. The worksheet attributed zero income to the former wife. Due to the former wife's lack of income, the $1200 in monthly private school tuition the former wife would have been obligated to pay under the MSA was also included in the worksheet and applied to the former husband's support obligation on a dollar per dollar basis. Later, at the former wife's entreaty, the former husband agreed to execute an addendum to the MSA whereby the children would attend public school and the former husband's child support obligation would commensurately be reduced by $1200, to $5300 per month. The addendum was executed on July 1, 2016.

For reasons not made known in the record, the Final Judgment of Dissolution of Marriage was not entered until August 26, 2016, nearly a year after the MSA. Nonetheless, it incorporated both the MSA and the addendum.

Three months later, on November 29, 2016, the former husband filed his Verified Petition for Modification of Child Support. In it, he asserted that his income had precipitously plunged since his child support obligation had been agreed upon by the parties in September 2015. He later filed an amended petition in May 2017. In turn, the former wife filed her Counter-Petition for Modification of Child Support in July, in which she alleged that the former husband's income had, in fact, dramatically increased in the eight months since he first filed his petition for modification.

2

It was revealed at the ensuing hearing that at the time the parties executed the MSA in September 2015, the former husband's gross annual income—made up of commission payments from his employment and profits from his other businesses—topped one million dollars; $1,009,556.79 to be exact. But 2016 proved to be a bad year for the construction industry. Because the former husband's employment—from which he received his commissions—was directly related to the construction trade, his 2016 commission income was likewise impacted, dwindling to $464,448.78. His total annual income for 2016, which included the profits from his other businesses, amounted to only $677,266.

Both parties acknowledged that because the former husband's "salary" from his regular employment was entirely commission-based, it would ebb and flow from month to month, and from year to year. Thus, by May 2017, the former husband's income showed a marked recovery, with projected year-end earnings just short of a million dollars. Yet, for purposes of establishing his claim for a retroactive reduction in child support, the former husband calculated his monthly income from the date he filed his petition in November 2016 until May 2017, using both his commissions and his other sources of income to arrive at the "reduced" monthly income of $29,377.02 during the applicable time frame.

Worthy of note is the former wife's testimony that, on September 1, 2016, when the former husband presented her with the first installment of the lump sum payment upon which they had agreed in the MSA, he advised her to "be thrifty" because he planned to take her back to court "to lower his child support." For his part, the former husband acknowledged he had told the former wife his commission checks would not keep coming in and she would be wise to curtail her spending. Specifically, he stressed, "I can't continue to pay at a million dollar mark when you're not making the million dollars."

The former wife testified she had recently graduated from dog grooming school and was hoping to open her own business. She explained that she chose that vocation because it would enable her to create her own schedule in order to accommodate the needs of one of the parties' minor sons who was being treated for severe

anxiety and ADHD. The former wife agreed with former husband's counsel that it would be "a fair thing to say that [she] could earn $10 an hour doing that type of work." At that amount, the former wife also agreed she could earn a minimum of $1300 per month, working six hours a day, five days a week, in order to be with her special-needs child when the school day ended.

Following the hearing, in its final order on the parties' respective petitions, the trial court referenced the former husband's testimony that his income had decreased since the entry of the MSA and the August 26, 2016 Final Judgment of Dissolution of Marriage. But it went on to reference his additional testimony that he "knew the decreases were coming . . . and told the Former Wife that she needed to be careful with her spending due to his decreasing income, and he warned her that he may need to ask for modification." The court found that "[t]he Former Husband said this was not meant as a threat, and he told her this as a courtesy." The court acknowledged the former wife's testimony that the former husband had told her on September 1—a week after the August 2016 final judgment—that he was taking her back to court, and encapsulated the former wife's testimony that she had never been privy to the parties' accounts during the marriage—as the former husband had controlled the finances and the bills—and was unaware that the former husband was making a million dollars a year.

The trial court next discussed the structure of the former husband's salary as being 100% commission-based and that his earnings were expected to fluctuate. It then found:

The Former Husband's explanation for telling the Former Wife on September 1, 2016 that he planned to take her back to Court for modification was that he was seeing and experiencing a decrease in his income immediately (5 days) after the final judgment was entered. However, *his testimony was that his income started decreasing in 2015* and continued throughout 2016.

The Former Husband was aware the company's business transactions were declining over a period of time after the MSA was signed and before the Final Judgment was entered. Accepting the Former Husband's testimony

regarding his decline in income as well as the Former Wife's testimony that their conversation occurred on September 1, 2016 *supports the Court's conclusion that the Husband knew about his decreasing income before the Final Judgment on August 26, 2016.*

(Emphasis added.)

Significantly, the trial court stated it had considered "the line of cases" argued at the hearing by the former husband's attorney, which stood for the proposition—as noted by the court—that "a one year period of time of decreased income" meets the requirement of a permanent change. But in the next breath, the trial court found that "[t]he Former Husband did not experience a full year of substantially lowered income." However, later in its order, after acknowledging that the former husband's income "is back to the level it was prior to the Final Judgment," the trial court declared:

The Former Husband argues that the substantial change in income between the Final Judgment and June 2017 warrants a retroactive decrease in child support for the six months from filing the petition for modification through June 2017, *notwithstanding the lack of a permanent change in income.* The Court finds this is appropriate and will grant the decrease in child support from November 29, 2016 to May 31, 2017. The Husband shall receive credit for the overpayment made during this six month period.

(Emphasis added.)

Accordingly, the trial court granted the former husband's Amended Verified Petition for Modification of Child Support to the extent that his child support obligation "between November 29, 2016 and May 31, 2017 is decreased from the $5,300 in the Final Judgment to $3,372 (Exhibit 1) leaving him with an over-payment of $11,568.00 for this period." In line with the former husband's suggestion during the hearing, the trial court ordered that he "pay a reasonable amount of the Former Wife's attorney's fees and costs," which amount would be credited by the over-payment of child support in the amount of $11,568.00.

5

Addressing the former wife's counter-petition, the trial court concluded that she had the ability to work full-time. It therefore imputed minimum wage earnings as income to her for the purpose of recalculating the former husband's child support obligation. It then granted her petition by prospectively increasing child support based on the guidelines worksheet, which reflected the increase in the former husband's current earnings and the imputation of income to the former wife, amounting to $1440. The court found those factors altered the former husband's child support obligation by increasing it to $5,347 per month for both children, and $3,512 when the oldest child was no longer eligible for child support. For purposes of calculating the current child support on the guidelines worksheet, the trial court considered the former husband's reduced health and dental care premiums for the children, which totaled $346. However, the guidelines worksheet attached to the final order actually utilized the higher health and dental premium costs of $440, an amount both parties agreed the former husband was no longer obligated to pay.

II

On appeal, the former wife's principal argument is that the trial court erred by granting the former husband's petition and retroactively modifying his child support obligation from the date he filed his petition in November 2016 until June 2017. She asserts that the "change in circumstances" regarding the former husband's salary was neither unanticipated nor permanent.

In *Wood v. Wood*, 162 So. 3d 133 (Fla. 1st DCA 2014), we reiterated the standard applicable to a petition for modification of child support:

> "A party moving for modification of child support has the burden of proving the following factors: (1) a substantial change in circumstances; (2) the change was not contemplated at the time of the final judgment of dissolution; and (3) the change is sufficient, material, involuntary, and permanent in nature. *Maher v. Maher*, 96 So. 3d 1022, 1022 (Fla. 4th DCA 2012). 'When the original child support amount is based on an agreement by the parties, as here, there is a heavier burden on the party seeking a downward modification.' Id."

6

*Id.* at 135 (quoting *Kozell v. Kozell*, 142 So. 3d 891, 894 (Fla. 4th DCA 2014)); *see generally Pimm v. Pimm*, 601 So. 2d 534, 536 (Fla. 1992)). We review a trial court's decision to modify child support for an abuse of discretion. *Id.* Under the singular circumstances of the instant case, we find the trial court abused its discretion.

Initially, we disagree with the former husband's view that the facts of the present case established the change in his income was permanent. While the cases on which he primarily relies—*Dogoda v. Dogoda*, 233 So. 3d 484 (Fla. 2d DCA 2017), and *Freeman v. Freeman*, 615 So. 2d 225 (Fla. 5th DCA 1993)—could, when read together, support the idea that "permanent" may in some factual contexts be interpreted to mean one year or more, if one begins counting from the date the parties executed the MSA, we find that this case does not fit within that factual framework.

The former wife rightly points out that certain of the trial court's findings wholly contradict the former husband's argument, as well as its conclusion that the former husband proved his case for retroactive modification. First, in its final order, the trial court expressly found that although it had considered the case law we have just cited, the former husband "did not experience a full year of substantially lowered income." Second, the trial court chose the date of the final dissolution judgment—instead of the date the parties executed the MSA—in determining the length of the changed circumstances, thereby implicitly rejecting the former husband's position advanced below. Furthermore, the trial court found that the former husband's testimony revealed that his income started decreasing in 2015 and continued throughout 2016, and that he "knew about his decreasing income before the Final Judgment on August 26, 2016."

We conclude that those findings are irreconcilable with the standards for supporting a downward modification of child support through proof of an unanticipated, and permanent change in circumstances. Thus, we hold the trial court abused its discretion in granting the former husband's petition for a retroactive modification.

As the former wife also argues, the trial court additionally erred in utilizing the incorrect sum of combined health and dental premiums the former husband was then currently paying in

calculating his child support obligation in line with the former wife's counter-petition for modification. During the former husband's testimony, he agreed that his combined health and dental insurance premiums for coverage of the minor children decreased from $440 per month to $307.75 per month. Nevertheless, the trial court used the higher monthly amount of $440 on the guidelines worksheet in computing the new child support obligation. The former husband essentially concedes this error in his Answer Brief, but seeks to justify the difference under section 61.30, Florida Statutes. We hold, however, that the five percent variance permitted by section 61.30 is inapplicable in this instance, since there was nothing in the record that even hints at any intent on the trial court's part to utilize the greater amount so as "to order payment of child support in an amount which varies more than 5 percent from such guideline amount . . . ." § 61.30(1)(a), Fla. Stat. Accordingly, on remand, the trial court is instructed to recalculate child support using the lower premium amount as reflected in the parties' testimony.

## III

To summarize, we reverse the final order to the extent it grants a retroactive modification of the former husband's child support obligation and utilizes the incorrect sum of insurance premiums in calculating child support under the guidelines. In all other respects, the final order is affirmed.

AFFIRMED, in part, REVERSED, in part, and REMANDED for further proceedings consistent with this opinion.

RAY and KELSEY, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Ross A. Keene of Ross Keene Law, P.A., Pensacola, for Appellant.

Travis R. Johnson of Meador & Johnson, P.A., Pensacola, for Appellee.