925 So.2d 364 (2006)
Laurie Jeanne KELLY, Appellant,
v.
Gregory W. KELLY, Appellee.
No. 5D05-177.
District Court of Appeal of Florida, Fifth District.
March 3, 2006.
Rehearing Denied April 3, 2006.
*366 Nancy N. Nowlis and Barry L. Zisser of Zisser, Robison, Brown, Nowlis & Maciejewski, P.A, Jacksonville, for Appellant.
Hal Castillo, Jacksonville, for Appellee.
SHARP, W., J.
Laurie Jeanne Kelly, the former wife, appeals from an order rendered after a hearing to award attorney fees, following the completion of her dissolution proceeding. The order denied, in large part, her request for an attorney fee award, and granted her $3,901.50 in fees to compensate for the delays caused by the former husband, Gregory W. Kelly, during the litigation. She argues that the award fails to adequately compensate her for the costs and time incurred by her attorney, and that she should have been awarded all of her costs and fees based on the great disparity in the parties' financial circumstances following the distribution of marital assets. The final decree denied her any alimony, and denied her any share in the increase in value of Gregory's business interests during the parties' marriage because of a prenuptial agreement.[1] We reverse and remand to the trial court for determination of an appropriate award of fees and costs.
The parties were married for almost sixteen years at the time Laurie filed a petition for dissolution in 2000. They separated in 1999 after Gregory discovered she had begun an affair with another man three years earlier. At the time of the dissolution, Gregory was 73 years old and Laurie was 46. They had two minor children.
Laurie had been a stock broker when the parties married, but during the marriage, she was a full-time housewife and mother. She testified she had not held a full-time employment position for twenty years. The court did not impute any income to her based on possible future employment. The parties lived a luxurious life style. Their marital home was on the ocean in Ponte Vedra Beach, and was sold during the dissolution proceeding for $4.6 million.
Gregory left the marriage with a net worth of $12,654,731.00. His net monthly income was $86,032.83, and he was still employed. Laurie received part of the proceeds from the sale of the marital home  $1.8 million. She was required to pay $25,000.00 on a credit card that had originally been allocated to Gregory; she was ordered to pay child support of $868.00 per month; and she received no award of alimony. There was some dispute about additional marital assets she would receive over time  in two or three years  $858,147.92 or $963,728.10, but the former husband conceded that there had *367 been a mathematical calculation error and that the sum was the latter figure.
The trial court found that Gregory's financial position relative to Laurie's, post the dissolution, was "superior" and that the parties had enjoyed a "very comfortable lifestyle." However, it determined that Laurie did not have any "need" to have her attorney fees paid by Gregory because she was "self sufficient" financially, since she should have $2 million in assets to invest. The court found that she could earn 6% per year, which would produce $120,000 per year, or a gross of $10,000.00 per month, the amount that Laurie had lived on during these lengthy dissolution proceedings. Laurie projected her living expenses to maintain her marital lifestyle were $18,000.00 per month. The court found her expenses were overstated. $10,000.00 per month would sustain her in a proper lifestyle. Unfortunately, the record does not support the trial court's calculation of her income.
At the hearing on attorney fees, an attorney expert testified that this had been an extremely difficult dissolution case to handle, and that it had involved almost every possible difficult family law issue from custody to valuation of businesses. He noted that the litigation had lasted three years, issues had been bifurcated, a duplicate lawsuit had been filed by Gregory in another county, and that there had been acrimony between counsel and the parties. He testified that Laurie's attorney had charged a reasonable hourly rate and expended a reasonable amount of time on the case. Gregory had paid $35,000.00 in temporary fees for Laurie, and her attorney was reasonable in seeking payment of a balance of $88,000.00. The attorney fee affidavit justified a total award of $123.000.00 for fees and $12,691.23 in costs.
Laurie testified that she would have to use some of the $1.8 million she had received in equitable distribution to purchase a home for herself, and to have an appropriate place for housing the children when they visited her. Thus, the projection of $10,000.00 in gross income per month to her was erroneous. If she purchased a home for $500,000.00, keeping in mind the lifestyle she was accustomed to, her investment principal would be $1.3 million. If it earned 6%, her gross annual income would be $78,000.00; and her gross monthly income $6,500.00, minus child support of $868.00 per month = $5,642.00. This is far below the level that the trial court had projected would be adequate for her needs, based upon her $10,000 per month temporary payment.
Also at the hearing, the attorney for Laurie testified that there had been numerous failures on Gregory's part, to timely pay moneys due Laurie, and that Gregory had repeatedly failed to timely make full disclosures in response to discovery. Laurie's counsel testified that, in turn, extra time and effort were required on his part to obtain the information needed to proceed with the case. He also pointed to the file which indicated numerous requests by him for continuances due to incomplete discovery disclosures prior to hearings, which, in turn, required duplicate efforts to prepare for hearings and trials.
The trial court indicated it would make an award based on Gregory's delaying tactics and failure to timely comply with discovery. In its final order the court stated "The former husband in this case engaged in some attempts to delay, hinder, and obstruct the progress of the trial through his failure to comply with discovery requests and orders of this court." Based on the attorney affidavit showing time records, the court then determined this *368 amount was 15 hours, at $250.00 per hour and 2.1 hours at $75.00 = $3,901.50.

I. Award of attorney fees pursuant to Section 61.16
Section 61.16 provides in part:
(1) the court may from time to time, after considering the financial resources of both parties, order a party to pay a reasonable amount for attorney's fees, suit money and the cost to the other party of maintaining or defending any proceeding under this chapter, including enforcement and modification proceedings and appeals. . . .
The supreme court, in Rosen v. Rosen, 696 So.2d 697 (Fla.1997), explained that the language in section 61.16 requires the trial court to consider other relevant factors besides the financial resources of the parties, such as: the scope and history of the litigation; the duration of the litigation; the merits of the respective positions; and whether the litigation is brought or maintained primarily to harass.
Although the statute does not expressly mention need on the part of one party and the ability to pay attorney fees on the part of the other, the courts have included those factors in making awards of fees in dissolution cases. Some have emphasized that "need" is the primary consideration in cases where it is undisputable that one party has the ability to pay. See Nelson v. Nelson, 795 So.2d 977 (Fla. 5th DCA 2001); Morris v. Morris, 743 So.2d 81 (Fla. 5th DCA 1999); Satter v. Satter, 709 So.2d 617 (Fla. 4th DCA 1998); Mauldin v. Mauldin, 493 So.2d 1103 (Fla. 5th DCA 1986).
However, one party need not be completely without ability to pay attorney fees in order to be awarded fees. See Rowl v. Rowl, 864 So.2d 1236 (Fla. 5th DCA 2004); Cullen v. Cullen, 884 So.2d 304 (Fla. 2d DCA 2004). The purpose of the attorneys fees statute is to ensure that both parties will have a similar ability to obtain competent legal counsel. Cullen. The cases where attorney fees have been denied because one spouse has no need are ones in which he or she has received assets via equitable distribution or alimony, or has another income source with which to pay the attorney fees without diminishing the party's standard of living or depleting that party's assets. In a similar context, where the parties were each awarded in excess of $1,459,000 as equitable distribution, had lived a lavish lifestyle, the former husband had a large income and the wife received $3,000 a month in alimony, the court found there was no abuse of discretion in requiring the former husband to pay 75% of the wife's attorney's fees. Belmont v. Belmont, 761 So.2d 406 (Fla. 2d DCA 2000).
A spouse of a relatively long-term marriage is entitled to maintain the style or standard of living enjoyed during marriage if possible. See Cash v. Cash, 691 So.2d 6 (Fla. 5th DCA 1997); Oxley v. Oxley, 695 So.2d 364 (Fla. 4th DCA 1997). And a spouse is not required to deplete her capital assets to maintain the standard of living she enjoyed during the marriage. See Kaufman v. Kaufman, 541 So.2d 743 (Fla. 3d DCA 1989); Blakistone v. Blakistone, 462 So.2d 883 (Fla. 2d DCA 1985); In re Marriage of Jones, 357 So.2d 439 (Fla. 2d DCA 1978). See generally, Cullen; Nisbeth v. Nisbeth, 568 So.2d 461 (Fla. 3d DCA 1990). As the third district noted in De Cenzo v. De Cenzo, 433 So.2d 1316 (Fla. 3d DCA 1983), requiring a wife to deplete her capital assets is wrong, both as a matter of law and economics.
The relevant context in which to make a judgment regarding attorneys fees is after the dissolution proceeding has concluded, based upon the financial situation *369 in which it has left the parties.[2] Gregory is in a far superior financial posture than Laurie. His net assets and income exceed hers by more than a factor of 8. See Adair v. Adair, 720 So.2d 316 (Fla. 4th DCA 1998); Ondrejack v. Ondrejack, 839 So.2d 867 (Fla. 4th DCA 2003). Given the facts disclosed by this record, Laurie will have to further deplete her 1.8 million equitable distribution award in order to pay the $88,000.00 attorney fee balance, and $12,000.00 in costs, owed her attorney. As noted above, if Laurie purchases a nice home, not a luxurious one, her investment principal will necessarily be depleted. The payment of the fees to Laurie's attorney will deplete her principal assets further, thereby reducing her gross monthly income far below the level the trial court found would adequately sustain her lifestyle. See Murray v. Murray, 826 So.2d 1029 (Fla. 3d DCA 2001).
In reviewing an award of fees or lack of one, the appellate court uses the abuse of discretion standard. See Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980); Karpovich v. Karpovich, 739 So.2d 137 (Fla. 5th DCA 1999). In this case, we conclude that the trial court breached its discretion in not granting Laurie all or most of the fees and costs expended by her attorney. See Batson v. Batson, 821 So.2d 1141 (Fla. 5th DCA 2002); Blakistone v. Blakistone, 462 So.2d 883 (Fla. 2d DCA 1985); Karpovich; Reynolds v. Reynolds, 664 So.2d 1131 (Fla. 3d DCA 1995).

2. Fees for delay and increasing costs of litigation
In support of Laurie's contention that the $3,901.50 was an inadequate award for the delay and lack of cooperation on the part of Gregory, the record and attorney fee affidavit indicate numerous instances of delay tactics on the part of Gregory, from the beginning of the lawsuit throughout August of 2003, which increased the cost of litigation to Laurie. The trial court was correct in awarding attorney fees for this reason. See Rosen; Elliott v. Elliott, 867 So.2d 1198 (Fla. 5th DCA 2004); Nelson; Seward v. Seward, 676 So.2d 49 (Fla. 5th DCA 1996); Levy v. Levy, 862 So.2d 48 (Fla. 3d DCA 2003). A recitation of all instances is not possible in this opinion. However, we list some of the extra efforts the former wife had to resort to in order to prosecute her case.
1. In December of 2000, the former wife was required to file a motion to compel the former husband to give more responsive answers in discovery concerning the alleged destruction of the parties' prenuptial agreement.
2. In February of 2001, the former husband produced audio cassettes of telephone conversations of the former wife. She had to file a motion to suppress them.
3. On January 2, 2002, the former wife filed a motion for contempt, and a motion to continue the trial because the former husband had refused to cooperate in discovery.
4. In February of 2002, the former wife filed a motion to compel discovery, impose sanctions and continue the final hearing.
5. The former wife filed a motion to continue again prior to the September 12, 2002 trial date, because the information provided by the former husband about his net worth was incomplete.
6. On October 10, 2002, the former wife filed a motion for contempt because the former husband had withheld support and refused to pay her credit card bill as ordered by the court.

*370 7. On November 8, 2002, the former wife filed a motion for contempt and for assessment of court costs and attorney's fees because the former husband did not appear at his scheduled deposition.
8. On January 2, 2003, the former wife filed a motion to compel and a motion to continue the final hearing because the former husband refused to cooperate with Mr. Fred Wainio, the court-appointed business evaluator. The former husband admitted that he had not complied with all of Mr. Wainio's requests.
9. On January 13, 2003, the former wife filed a motion for contempt, based on a letter from the former husband to Mr. Wainio, in which he accused Mr. Wainio of being biased and prejudiced and requested that he resign.
10. On July 9, 2003, the former wife filed a motion for contempt because the former husband withheld support for the month of July.
11. On August 14, 2003, the former wife filed an emergency motion requesting court intervention because the former husband was corresponding with Mr. Wainio on the condition that disclosure would be withheld from the former wife.
Further, at the hearing on attorney fees, Laurie told the court that Gregory had delayed in paying sums due her throughout the proceedings and more recently one-half the value of the contents of the marital residence, after it was sold, which, at that point was more than 40 days late. The court commented that this had been a "remarkable case."
Based on the extensive showing of delay and obstruction on the part of Gregory throughout this case, we can find no basis for such a modest award. The time and effort to draft pleadings for relief, to determine that discovery violations occurred, obtain court interventions and seek out remedies for the listed instances above alone must have greatly exceeded the 15 hours of attorney time encompassed in the $3,901.50 award. Further, the court failed to award or address costs which may have been associated with these tactics.
Accordingly, we reverse and remand to the trial court to recalculate the attorney fee and cost award for Laurie, taking further evidence, if necessary, and awarding full costs and fees related to any bad faith, obstructive tactics. If, on remand from the prior case, there is a change in the equitable distribution award based on invalidation of the marital settlement agreement resulting in a more substantial award of assets to Laurie, then, indeed, Laurie may have no need for an award of attorney fees above and beyond those attributable to delay and obstruction.
REVERSED AND REMANDED WITH DIRECTIONS.
ORFINGER and LAWSON, JJ., concur.
NOTES
[1] Another panel of this court affirmed the former wife's appeal from the dissolution decree, but remanded for the lower court to address her contention that the prenuptial agreement was unenforceable due to a lack of full disclosure, duress or undue influence. Kelly v. Kelly, 898 So.2d 1096 (Fla. 5th DCA 2005).
[2] Driscoll v. Driscoll, 763 So.2d 1189 (Fla. 4th DCA 2000).