959 So.2d 821 (2007)
Nicolaus VON BAILLOU, Appellant,
v.
Jackie Lee VON BAILLOU n/k/a Jackie Lee Johnson, Appellee.
No. 4D06-1989.
District Court of Appeal of Florida, Fourth District.
July 5, 2007.
*822 Jane Kreusler-Walsh of Jane Kreusler-Walsh, P.A., West Palm Beach, and Michael P. Walsh of Michael P. Walsh, P.A., West Palm Beach, for appellant.
Neil B. Jagolinzer of Christiansen & Jacknin, West Palm Beach, for appellee.
GROSS, J.
The former husband appeals a final order requiring him to pay 100% of the attorney's fees, accountant's fees, and costs incurred by his former wife in their dissolution action. We reverse, holding that a spouse with $2.5 million in assets and monthly income of $6,177 does not have a financial need for all of her fees to be paid by the other spouse.
The 2005 final judgment of dissolution left each spouse with a $2.5 million share of marital assets. In addition, the former husband has $3.7 million in non-marital assets which generates income that he uses to pay expenses, alimony, and child support. Monthly, the former wife receives $4,000 in permanent alimony and $2,023 in child support. Excluding child support, the former wife's net monthly income is $6,177. The former husband's net monthly income is $15,127. The court found that the former husband was "not able to support the [former wife] in the standard of living she was accustomed to in the marriage."
Pursuant to a temporary relief order, the former husband paid his former wife's attorney $100,000 and her forensic accountant $40,000. In the litigation, the former wife incurred $285,619 in attorney's fees and costs and forensic accounting fees of $96,021, for a total of $381,640. The former husband's attorney's fees amounted to $193,798. After an evidentiary hearing, the trial court awarded the former wife $241,640, the difference between the $381,640 incurred and the $140,000 the former husband had already paid. The *823 order thus required the husband to pay the entire $575,438 in attorney's fees and costs that the couple incurred in the dissolution. The court based its decision on a need/ability to pay analysis, not upon any of the other relevant considerations bearing on attorney's fees identified in Rosen v. Rosen, 696 So.2d 697, 700 (Fla.1997).[1]
The trial court treated the award of attorney's fees and costs as an all or nothing proposition, an approach apparent from this rhetorical question in the order:
The next question, then, is, can [the former wife] pay her reasonable fees and costs totaling $381,640 without substantially depleting her overall equitable distribution, when those expenses are approximately 16% of her equitable distribution and her income is [$6,177 per month]? The answer is no.
Section 61.16(1) Florida Statutes (2006), provides that the court in a dissolution of marriage case "may from time to time, after considering the financial resources of both parties, order a party to pay a reasonable amount for attorney's fees, suit money, and the cost to the other party of maintaining or defending any proceeding under this chapter. . . ." By the vague, general requirement that a court "consider the financial resources of both parties," the statute has vested broad discretion in the courts to develop a body of law shaping the considerations relevant to an award of Chapter 61 attorney's fees and costs.
Construing section 61.16, the supreme court has written that the legislature gave "trial judges wide leeway to work equity in chapter 61 proceedings[,]" so that the section should "be liberally  not restrictively  construed to allow consideration of any factor necessary to provide justice and ensure equity between the parties." Rosen, 696 So.2d at 700; see Bane v. Bane, 775 So.2d 938, 941 (Fla. 2000). "The purpose of the section is to ensure that both parties will have a similar ability to obtain competent legal counsel." Rosen, 696 So.2d at 699; Bane, 775 So.2d at 941.
The central inquiry under section 61.16 is whether one spouse has a need for fees and the other spouse has the ability to pay them. See Blaine v. Blaine, 869 So.2d 716, 718 (Fla. 4th DCA 2004); Bagley v. Bagley, 720 So.2d 582, 583 (Fla. 4th DCA 1998). Financial need is "the hidden notion in the statutory term `financial resources of both parties.'" Satter v. Satter, 709 So.2d 617, 619 (Fla. 4th DCA 1998). "Need" is "the necessity for some financial assistance to engage an attorney and pay attorney fees." Id. at 618-19. If one party has no financial need for fees, the other party cannot be compelled to pay them solely because his or her sizeable assets minimize the financial strain of such a payment. Id.
Embedded in the concept of financial need is the notion that an award of fees is proper "to prevent the inequitable diminution" of a spouse's share of an equitable distribution. Bagley, 720 So.2d at 583-84; see Hough v. Hough, 739 So.2d 654, 655 (Fla. 4th DCA 1999); Kendall v. Kendall, 677 So.2d 48, 49 (Fla. 4th DCA 1996); *824 Margulies v. Margulies, 645 So.2d 54 (Fla. 4th DCA 1994).
What amounts to an "inequitable diminution" of a share of equitable distribution is a fact-sensitive determination. In cases where the "poorer" spouse left the marriage with a substantial equitable distribution, courts have either reversed a total or partial award of attorney's fees or affirmed a denial of attorney's fees.
Thus, in Satter, the former husband's net worth was at least $13 million and the former wife's was $1.1 million. This court reversed an award of $24,000 in attorney's fees in a post-judgment proceeding, noting that the award constituted 2/100ths of the former wife's net worth, so that there was no financial need for the fees under section 61.16. 709 So.2d at 618-19.
In Blaine, each spouse received $2,079,081 in equitable distribution; the husband's income was $27,814 per month and the wife was "capable of earning between $50,000 and $90,000 a year." 869 So.2d at 718. The husband paid $52,000 in attorney's fees during the proceedings and the trial court denied the wife's claim for additional attorney's fees. We affirmed, writing that "although the former wife may have been required to liquidate some of her assets, she could have easily paid reasonable attorney's fees without substantially depleting her overall equitable distribution." Id.
Similar to Blaine and Satter, Morris v. Morris, 743 So.2d 81, 82 (Fla. 5th DCA 1999), is a case where the wife left the marriage with $876,000 in equitable distribution; the husband's share was $1,206,000. The wife had about $50,000 per year in income, including permanent alimony of $45,000, while the husband had approximately $100,000 in annual income. The trial court ruled that the wife was entitled to an award of attorney's fees. The fifth district reversed, holding that neither party had a financial need under section 61.16, since "[n]either party was left in a position where he or she could not afford his or her own attorney's fees." Id. at 82.
On the other side of the coin are Margulies, 645 So.2d at 54 and Reich v. Reich, 652 So.2d 1200 (Fla. 4th DCA 1995), cases where we reversed trial court decisions requiring the more impecunious spouse to pay a portion of attorney's fees. In Margulies, the husband's annual income was $550,000. 645 So.2d at 54. The trial court required the wife to pay one-half of her attorney's fees and costs. We reversed and remanded with the direction that the husband be responsible for the full amount of the fees and costs. Id. at 55. Two factors were crucial in Margulies. The husband was capable of paying all of the fees and costs out of current earned income "without invading any assets or even touching his investment income" while the "wife would be required to invade her capital assets, which in turn would decrease the amount of income which they would generate." Id. at 54. Similarly, Reich was a case where the wife received $73,000 in equitable distribution and had a small income, while the husband earned $100,000 a year and had a "substantial net worth." 652 So.2d at 1203. We reversed the requirement that the wife pay $3,000 of the $13,000 awarded in attorney's fees. Id.
This case is similar to Satter, Blaine, and Morris. The former wife received $2.5 million in equitable distribution and $4,000 a month in permanent alimony. The husband paid the initial $140,000 in fees under the temporary relief order. Unlike the husbands in Reich and Margulies, the former husband is unable to pay the entire $241,640 in fees out of his current earned income. Contrary to the trial court's apparent belief, nothing precluded *825 the court from holding the wife responsible for a portion of her fees. With $2.5 million in assets, the former wife is able to pay some portion of her litigation fees without suffering an inequitable diminution of her assets. If a person is required to bear at least a portion of his or her attorney's fees, that person is more likely to be a responsible, conservative consumer of legal services.
The former wife relies on Kelly v. Kelly, 925 So.2d 364 (Fla. 5th DCA 2006), but that case is distinguishable on its facts, as often happens in dissolution cases. The former husband in Kelly left the marriage with a net worth of $12,654,731; the former wife's net worth was $1.8 million, plus $963,728.10 to be received over several years. The former husband's monthly net income was $86,032.83; the wife's income was something less than the $10,000 per month that "would sustain her in a proper lifestyle." Id. at 367. The former husband paid $35,000 in temporary fees and the former wife sought an additional $88,000. As in Margulies, the husband in Kelly was well able to pay $88,000 in fees out of his monthly income, without invading capital. In requiring the husband to pay the entire $88,000, the fifth district was concerned about the level of the former wife's lifestyle if she were required to deplete her equitable distribution. Id. at 369. Also, the court focused more on the relative financial strain of paying attorney's fees than on the concept of financial need, an approach that this court moved away from in Satter. Finally, the court did not factor into its discussion the $963,728.10 distribution coming to the wife in the near future and failed to distinguish Morris, a case that might have allowed a different result.
We reverse the award of attorney's fees and remand to the trial court to determine what portion of the $241,640 at issue shall be borne by the former wife.
SHAHOOD, C.J., and MAY, J., concur.
NOTES
[1] In Rosen, the supreme court held that the "financial resources of the parties are the primary factor to be considered" in an award of attorney's fees under section 61.16, Florida Statutes (1995). 696 So.2d at 700. The court went on to add that

other relevant circumstances to be considered include factors such as the scope and history of the litigation; the duration of the litigation; the merits of the respective positions; whether the litigation is brought or maintained primarily to harass (or whether a defense is raised mainly to frustrate or stall); and the existence and course of prior or pending litigation.
Id.