DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**KELLY A. KRANCI,**
Appellant,

v.

**CASEY J. KRANCI,**
Appellee.

No. 4D2023-1808

[November 20, 2024]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Natasha DePrimo, Judge; L.T. Case No. FMCE19-001348.

Catherine L. Roselli, Fort Lauderdale, for appellant.

Erin Pogue Newell of Open Book Appeals, Fort Lauderdale, for appellee.

GROSS, J.

We reverse a final judgment for dissolution of marriage, primarily because the circuit court erred in holding the wife to a 2021 stipulation on the value of the marital home in a 2023 trial. We remand to the trial court for reevaluation of equitable distribution, the wife's attorney's fees, and alimony consistent with this opinion.[1]

### *Factual and Procedural Background*

The parties were married in 1998. The wife petitioned for dissolution of marriage on January 31, 2019. The parties' youngest child was almost 17 at the time of the petition. The parties had purchased a home in Davie, Florida in 2015. In 2019, the home was appraised at $560,000. After the petition was filed, the parties lived together in the marital home until the wife moved to Iowa to stay with a friend in May 2019.

---

[1] We affirm the circuit court's rulings on retroactive alimony and all child support issues without further discussion.

The case first went to trial before Judge Peter Holden on February 16, 2021. The wife wanted to argue that the home's fair market value was $668,000, but she did not have a current appraisal of the home. The husband thought the home's fair market value was $533,000. Because of such a discrepancy in the parties' positions as to the home's value, without evidence to support it, Judge Holden recognized that the case could not proceed at that time unless the parties worked out an agreement on valuation. To avoid a postponement of the case, the parties conferred during a recess and agreed that the husband would retain the home in equitable distribution at a $600,000 valuation.

The final hearing did not conclude on February 16. The husband suggested that the parties attend mediation. With the wife's consent, the judge entered a mediation order. The parties attended a mediation on April 1, 2021, but they could not reach an agreement.

Although the case was scheduled for trial several more times, the dissolution trial did not resume before Judge Holden over the next two years. Judge Holden was transferred out of the family law division and Judge Natasha DePrimo eventually replaced him.

Meanwhile, the wife had moved to set aside the stipulation as to the marital value of the home, arguing that the stipulation was made with the understanding that the trial court would render a final judgment during or shortly after the February 2021 hearing.

The substitution of judges caused issues regarding which judge should preside over the case at that point. In May 2022, Judge DePrimo directed that all matters related to the case, including the conclusion of the final hearing, be heard before Judge Holden. Judge DePrimo also cancelled the special set hearing on the wife's "Third Urgent Motion for Temporary Support and Temporary Fees and Costs,"[2] directing that the matter be heard by Judge Holden.

---

[2] The record does not reflect that any temporary relief order regarding support or attorney's fees was ever entered. Within six months of the petition being filed in 2019, the wife moved for temporary spousal and child support and temporary attorney's fees and costs. At a February 3, 2020, hearing on the motions, Judge Holden granted the husband's motion for continuance without ruling on the wife's motions. From the wife's standpoint, the inability to obtain any temporary relief order magnified the need to obtain a final judgment of dissolution when the case went before Judge Holden for trial.

After a July 13, 2022, case management conference with Judge Holden, the wife moved for disqualification, contending that the judge would always give trial priority to in-custody criminal defendants over this family court matter. Judge Holden denied the motion for disqualification in August 2022 and returned the case to the family law division where the case "would have to start from the beginning."

Within ten days of Judge Holden's order, the wife moved for a case management conference in this case that had been pending for 3½ years.

A hearing on the wife's motion to set aside the February 2021 stipulation on the value of the marital home was held before Judge DePrimo on March 24, 2023. A February 1, 2023, appraisal of the home valued it at $845,000. Judge DePrimo denied the motion to set aside the stipulation.

When the case came before the court for trial on March 27, 2023, Judge DePrimo reaffirmed her earlier ruling on the stipulation. At this point, Judge DePrimo became involved in a discussion of whether the wife would pursue an appeal of the judge's ruling on the stipulation. She said "if I begin the trial, we're going to have the same issue that if it goes up on appeal and then it's coming back—or whatever happens with it, then it could affect the proceedings and how it's proceeding forward." She told the wife that "the issue is we don't want to do this again. And for this family, in particular, they've gone through this enough times that they don't need to have it all over again." She announced that she was taking a recess to give the wife time to talk to her attorney "to figure out whether or not you want to appeal my ruling or how you want to proceed."[3]

After the recess, the parties went back on record. Judge DePrimo asked whether the parties were ready to proceed. The wife's attorney responded: "Yes, Your Honor. So, I discussed with my client the issue of Your Honor's ruling on Friday, and she will not be appealing . . . that ruling with regards to the value of the house and the upholding of that stipulation." The parties then proceeded with the trial.

On June 11, 2023, Judge DePrimo entered the final judgment now on appeal.

---

[3] The judge's oral ruling on the stipulation, if it had been reduced to an order, would have been a non-appealable, non-final order. *See* Fla. R. App. P. 9.130.

3

***The Circuit Court Abused its Discretion in Refusing to Set Aside the 2021 Stipulation as to the Marital Home's Value***

We reject the husband's contention that Judge DePrimo acted properly regarding the wife's rights to appeal the judge's denial of the motion to set aside the stipulation. In the criminal arena, where judges are required to inform defendants of their legal rights, judges routinely advise defendants of their right to appeal. *See* Fla. R. Crim. P. 3.172(c)(4). A trial judge has no business conditioning a trial, or appearing to do so, upon a litigant's waiver of the right to appeal a pretrial ruling. In *T.A. Enterprises, Inc. v. Olarte, Inc.*, 931 So. 2d 1016 (Fla. 4th DCA 2006), we wrote:

> Article V, section 4(b)([1]) of the Florida Constitution grants a constitutional right to appeal as a matter of right, from final judgments or orders of trial courts. The supreme court has written that the legislature may implement this constitutional right and place reasonable conditions upon it so long as they do not thwart the litigants' legitimate appellate rights.

*Id.* at 1018 (internal citations and quotation marks omitted). We are aware of no rule, statute, or legal principle that empowers a judge to engage in conduct that has the effect of curtailing a litigant's appellate rights.

The trial judge's insistence on applying the 2021 stipulation to the 2023 trial was an abuse of discretion. The main impetus for the stipulation was to avoid a postponement so the case could proceed to trial and be resolved. An implied condition in an agreement is a condition that is not explicitly stated but is inferred from the conduct of the parties or the circumstances surrounding the agreement. The implied condition here was that the trial would conclude, and a final judgment would issue, within a reasonable time. A "presumptively reasonable" time period for the completion of a contested domestic relations case is "180 days (filing to final disposition)." Fla. R. Gen. Prac. & Jud. Admin. 2.250(a)(1)(C)ii. Starting a trial anew over two years after the trial had begun and over four years after the case had been filed is so clearly unreasonable that it could not have been contemplated by the parties back in 2021.

The record indicates that the valuation of the marital home, the parties' major asset, had appreciated significantly since 2021. Had the home depreciated by 40 percent over two years, as homes did during the Great Recession, it would be unfair to hold the husband to the 2021 stipulation. The 2021 stipulation did not contemplate an unreasonable delay where the parties bore the risk of a drastic change in the home's valuation.

4

We reverse the equitable distribution award and remand to the trial court for consideration of the value of the marital home in the absence of the 2021 stipulation as to value.

### *The Circuit Court Erred in Failing to Require the Husband to Pay a Portion of the Wife's Attorney's Fees*

On remand, the court shall also reconsider the wife's claim for attorney's fees and alimony.

In the final judgment, the circuit court denied the wife's request for attorney's fees, finding that an equalizing payment, $657 in monthly alimony, and the husband's finances mitigated against any award.

Section 61.16, Florida Statutes (2019), provides that the court in a dissolution of marriage case "may from time to time, after considering the financial resources of both parties, order a party to pay a reasonable amount for attorney's fees, suit money, and the cost to the other party of maintaining or defending any proceeding under this chapter . . . ." § 61.16(1), Fla. Stat. (2019). The factors to consider in awarding fees in a dissolution case are "the financial need of the requesting party and the financial ability of the other party to pay." *Derrevere v. Derrevere*, 899 So. 2d 1152, 1153 (Fla. 4th DCA 2005). In considering a party's financial need, it is proper "to prevent the inequitable diminution" of a spouse's share of an equitable distribution. *Bagley v. Bagley*, 720 So. 2d 582, 583–84 (Fla. 4th DCA 1998).

The husband's net income is over three times greater than the wife's net income, and the husband possesses more liquid assets. After an equalizing payment based on the marital home's $600,000 valuation, the wife was left with assets worth $203,921 and debts and attorney's fees obligations of over $200,000.

"Embedded in the concept of financial need is the notion that an award of fees is proper 'to prevent the inequitable diminution' of a spouse's share of an equitable distribution." *Von Baillou v. Von Baillou*, 959 So. 2d 821, 823 (Fla. 4th DCA 2007) (quoting *Bagley*, 720 So. 2d at 583–84). The denial of an award of attorney's fees to the wife presents the type of inequitable diminution consistently rejected by Florida courts. *See Duncan-Osiyemi v. Osiyemi*, 117 So. 3d 882, 885 (Fla. 4th DCA 2013) ("revers[ing] the denial of an additional award of attorney's fees" "where the husband clearly had the financial ability to contribute to the wife's fees and the wife's equitable distribution award would be inequitably diminished should she not receive an award of fees"); *Chadbourne v.*

*Chadbourne*, 146 So. 3d 75, 75–76 (Fla. 1st DCA 2014) (reversing the denial of the wife's request for an award of attorney's fees and costs because requiring the wife to pay $200,000 out of her net worth of $1 million "would require 'an inequitable diminution' of her equitable distribution award"); *Tummings v. Francois*, 82 So. 3d 955, 961 (Fla. 2d DCA 2011) (holding that the trial court abused its discretion in concluding that "the wife does not have the ability to pay and that the husband does not have the need" "based solely on the equitable distribution of assets" without considering that "[t]he wife earns significantly more income than the husband"); *Margulies v. Margulies*, 645 So. 2d 54, 54–55 (Fla. 4th DCA 1994) (reversing trial court's "award of one-half of the fees and costs and remand[ing] with instructions to award the wife the full amount of attorney's fees and costs" "in light of the substantial disparity in actual income and earning capacity between the parties").

An award of Chapter 61 attorney's fees will be impacted by the amount of equitable distribution received by the wife on retrial. Based on this record, it was an abuse of discretion not to require the husband to make some contribution to the wife's attorney's fees and costs.

### *Alimony*

A revaluation of the house and change in equitable distribution may also impact the alimony award.

We note that the circuit court erred in relying on the husband's expert to compute the amount of alimony. In calculating the wife's need, the expert gave inadequate consideration to the standard of living enjoyed by the wife during the marriage and too much weight to her lifestyle in Iowa post-separation. Also, the expert's calculation of the wife's income was in error, as he used 40 hours of work for 52 weeks,[4] when the wife testified that her employer did not provide more than 33 hours. We reverse for the trial court to reconsider the wife's income and to fully consider the wife's lifestyle during the marriage along with the other factors under section 61.08(2), Florida Statues (2019), in determining alimony. We trust that these proceedings will occur expeditiously so that this matter may be finally concluded.

---

[4] It is also unreasonable to require the wife's income to be calculated based upon working 52 weeks a year, which would not allow for any time off whatsoever. That does not comport with the standard of the marriage, or the customary work year generally.

*Affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.*

W<small>ARNER</small> and C<small>IKLIN</small>, JJ., concur.

*   *   *

**Not final until disposition of timely filed motion for rehearing.**