DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JAYNE LOCONTO,**
Appellant,

v.

**RICHARD LOCONTO,**
Appellee.

No. 4D2023-3079

[May 28, 2025]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Lauren M. Alperstein, Judge; L.T. Case No. FMCE22-004752.

Carla P. Lowry of Lowry At Law, P.A., Fort Lauderdale, for appellant.

Susan R. Brown of Susan R. Brown, P.A., Plantation, for appellee.

PER CURIAM.

The former wife challenges the final judgment of dissolution. She contends that the trial court abused its discretion in its minimal alimony award, its failure to award attorney's fees, and the denial of retroactive alimony. We reverse as to the alimony award, as based upon the trial court's findings regarding this fifty-year marriage, the former wife had the need for additional alimony, which the husband had the ability to pay, pursuant to section 61.08(8), Florida Statutes (2023). We affirm as to the denials of attorney's fees and retroactive alimony, as both are within the trial court's broad discretion. We thus reverse and remand for the trial court to award alimony to the extent allowable under section 61.08(8). We affirm as to all other issues.

**Facts**

Because the trial transcript is incomplete, we rely on the trial court's findings in the final judgment and the procedural record to present the facts upon which the trial court ruled. The court held a final hearing and entered a detailed final judgment with detailed findings.

The parties married in 1972 but separated in 2022, a fifty-year marriage. At the time of the final hearing, the former husband was seventy-eight and retired, and the former wife was seventy-six, totally blind, and retired. The former wife had been blind since the age of twenty. Their three children were all adults.

The parties sold the marital home in March 2022. They each received $128,500 from the sale. A month later, the former husband filed the petition for dissolution of marriage, and the former wife counterclaimed requesting equitable distribution, alimony, medical and life insurance, and attorney's fees and costs. Former wife moved for temporary alimony and attorney's fees, and the court awarded $225 per month but denied a temporary attorney's fees award.

As of the date the parties filed their financial affidavits, the former wife had $118,392.03 in assets, and the former husband had $123,000.00. By the time of the final hearing, the former wife had only $38,000 remaining, while the former husband had $118,000. The former wife spent considerable monies living at a hotel during the pendency of the dissolution, spending $3,300 per month. The former husband, on the other hand, was spending only $1,220-1,300 per month for housing. The court found that the former wife's level of spending was "irresponsible." While the former wife had always been totally dependent upon the former husband, this still did not require the former husband to reimburse her or spend down his own assets because of her choice in her living arrangements.

On the alimony issue, at the time of trial, the former husband was receiving social security and a pension totaling $3,824 per month. The former wife was receiving only social security of $1,228 per month. The former wife's reasonable needs amounted to $2,477 per month, the former wife having moved into less expensive living quarters. The former husband had a monthly surplus of $949 over his expenses. After reviewing the factors to determine alimony, the court found that pursuant to section 61.08's recent legislative amendments, the former wife was entitled to durational alimony for thirty-seven years. The court awarded durational alimony in the monthly amount of $500 after the calculations necessary pursuant to section 61.08:

> In accordance with Fla. Stat. 61.08(c), the Court applied the formula which is set forth therein; the amount of alimony is the amount determined to be the obligee's reasonable need, or an amount not to exceed 35 percent of the difference between the parties' net incomes, whichever is less. The difference

2

between the parties' net incomes is $909; *the Wife's reasonable needs far exceeds $909.* As such, the Court has considered an amount not to exceed 35 percent of the difference between the parties' net incomes. However, the Court does not find that the Husband has the ability to pay $909 a month *as that would essentially leave the Husband with little to no surplus each month.*

(Emphasis supplied) (footnote omitted).[1]

The trial court denied the former wife's request for $7,500 in attorney's fees for two reasons. First, the court determined that the parties were essentially equally able to pay their respective attorney's fees based upon the equitable distribution and alimony. Second, court determined that "but for the Wife liquidating her share of the equitable distribution proceeds from the sale of the former marital home, she would have had a similar ability to the Husband to pay attorney's fees." The court would not require the former husband to pay her attorney's fees where she voluntarily had chosen to diminish her equitable distribution from the sale of the home.

From the final judgment, the former wife takes this appeal.

**Analysis**

We review both the award or denial of alimony and attorney's fees for an abuse of discretion. *See Fiala v. Fiala,* 333 So. 3d 215, 219 (Fla. 4th DCA 2022) (alimony); *Whittaker v. Whittaker,* 331 So. 3d 719, 721–22 (Fla. 4th DCA 2021) (attorney's fees)."

The former wife contends that the trial court's durational alimony award of $500 per month, the basis of which appears on the face of the judgment, was an abuse of discretion because the court failed to award alimony commensurate with her need and former husband's ability to pay alimony. We agree that the court should have awarded additional alimony consistent with section 61.08.

Section 61.08(8), Florida Statutes, amended in 2023, establishes a formula to determine durational alimony as recognized by the trial court. The statute provides:

---

[1] The Final Judgment included, in a footnote: "The difference between the Husband's monthly net income of $3,824 and the Wife's net monthly income of $1,228 is $2,596. 35% of $2,596 is $909."

3

(c) *The amount of durational alimony is the amount determined to be the obligee's reasonable need, or an amount not to exceed 35 percent of the difference between the parties' net incomes, whichever amount is less.*  Net income shall be calculated in conformity with s. 61.30(2) and (3), excluding spousal support paid pursuant to a court order in the action between the parties.

§ 61.08(8)(c), Fla. Stat. (2023) (emphasis added).

Even with the 2023 changes to section 61.08, any award is primarily governed by need and ability to pay.  Section 61.08(2)(a) provides: "In determining whether to award support, maintenance, or alimony, the court shall first make a specific, factual determination as to whether the party seeking support, maintenance, or alimony has an actual need for it and whether the other party has the ability to pay support, maintenance, or alimony." § 61.08(2)(a), Fla. Stat. (2023).  "Above all, while a trial court need not equalize the financial position of the parties, 'a trial judge must ensure that neither spouse passes automatically from misfortune to prosperity or from prosperity to misfortune, and, in viewing the totality of the circumstances, one spouse should not be 'shortchanged.'" *Addie v. Coale*, 120 So. 3d 44, 47 (Fla. 4th DCA 2013) (quoting *Canakaris v. Canakaris*, 382 So. 2d 1197, 1204 (Fla. 1980)).  In *Addie*, we held that the court abused its discretion in failing to award alimony to a husband where the wife had the ability to pay, and the husband had the need for, alimony. *Id.*  ("[E]ven based solely upon the wife's expert's figures regarding the husband's reasonable expenses, the husband would be running a significant monthly deficit and consequently would be shortchanged by a failure to award him alimony.").

Here, the trial court found that the former wife's reasonable needs amounted to $2,477 per month.  The former wife received $1,228 in monthly Social Security income.  The former husband had monthly income of $3,847.  He admitted that he had a surplus of $949 per month.[2]  The court correctly calculated that "35 percent of the difference between the parties' net incomes" was $909.  If the court had awarded the thirty-five percent or a monthly award of $909, former wife would receive $2,137 ($1,228 + $909) monthly and former husband would still have $2,915 ($3824 - $909), with a $40 monthly surplus.  Thus, the former husband still would have more income than the former wife.  The former wife,

---

[2] This amount was established in his financial affidavit, admitted by his counsel at trial, and found by the trial court in the final judgment.

however, would still have a monthly deficit of $340. The court's award of only $500 per month would leave the former wife with a monthly deficit of $749 ($2,477- (1,228 + $500)). This is not a case where the former wife may be able to supplement her income. The court found that the former wife had been totally blind since age twenty and had been totally dependent upon the former husband throughout the marriage.

Only awarding the former wife $500 per month in durational alimony shortchanges the wife, when section 61.08 authorizes the payment of $909, which would still not cover her reasonable expenses. She will still have to continue reducing her shrinking assets, even as the former husband will have a monthly surplus of $49. The court's justification that a greater monthly award than $500 would leave the former husband with little or no surplus ignores the fact that the wife will have a considerable deficit.

Generally, "[a] court should not require a [former] spouse in need of alimony to deplete or invade capital assets to maintain his or her standard of living." *Van Maerssen v. Gerdts*, 295 So. 3d 819, 826 (Fla. 4th DCA 2020) (citing *Sherlock v. Sherlock*, 199 So. 3d 1039, 1043 (Fla. 4th DCA 2016)); *see also Inman v. Inman*, 345 So. 3d 320, 323 (Fla. 4th DCA 2022). We applied this principle and held that the court abused its discretion in awarding insufficient alimony in *Hanks v. Hanks*, 553 So. 2d 340, 343 (Fla. 4th DCA 1989), where the wife's expenses were three times the amount of alimony awarded by the court, and the husband had the ability to pay more. Similarly here, the former husband has the ability to pay the entire statutory limited $909 monthly without invading his other assets. While the former wife will still have to dip into her assets to cover her reasonable expenses, awarding her the maximum statutory amount will bring her closer to her reasonable needs, the main criteria in establishing alimony. The trial court abused its discretion in failing to award that amount.

The trial court denied any award of attorney's fees to the former wife, finding that she had sufficient assets to pay her attorneys from the home sale proceeds, of which she received half. The court found that the former wife had spent a majority of those proceeds during the proceedings on housing, which the court deemed too expensive and irresponsible. Thus, the former wife's depletion of her assets was not a reason for the former husband to be required to invade his assets to pay her fees. We agree that the trial court had broad discretion to deny fees to the former wife. *See Rosen v. Rosen*, 696 So. 2d 697, 701 (Fla. 1997). Similarly, the retroactive alimony award, which would have to come from the former

husband's share of the home sale proceeds, is not an abuse of discretion. *See Vitro v. Vitro*, 122 So. 3d 382, 385 (Fla. 4th DCA 2012).

## Conclusion

Upon dissolution of this fifty-year marriage where the former wife was totally blind and completely dependent upon the former husband, the court abused its discretion in awarding the former wife durational alimony less than the amount allowed pursuant section 61.08(8), Florida Statutes (2023). The former wife's reasonable needs were greater than that amount, necessitating the former wife to deplete her meager assets to meet those expenses when the former husband had the ability to pay the allowable statutory amount. In all other respects, we affirm the final judgment.

*Affirmed in part and reversed in part.*

KLINGENSMITH, C.J., and DAMOORGIAN, J., concur.
WARNER, J., concurs in part and dissents in part with opinion.

WARNER, J., *concurring in part and dissenting in part.*

I concur in the majority opinion in its reversal of the alimony award. I dissent from the affirmance of the denial of attorney's fees and retroactive alimony to the former wife. On both issues, I consider the denial an abuse of discretion and would reverse.

The former wife has been blind since before the 50-year marriage to the former husband. She has been totally dependent upon him for both financial and physical support during that time. When the parties sold their home, the former wife was required to move into other accommodations. She ended up in a hotel charging around $89 per night plus tax, or about $3,000 per month. In the final judgment, the trial court found that excessive given her circumstances and the depletion was her voluntary choice. Even if the former husband had presented evidence that the former wife could have obtained less expensive housing, given her meager income and the reasonable expenses that the court found she required, she still would have had to deplete her assets and will continue to do so simply to support herself, as the majority opinion demonstrates. The former husband has greater income which covers all of his expenses without ever needing to tap into his assets. As a result, based upon my review of the applicable law as applied to these facts, I conclude that the trial court abused its discretion in denying any attorney's fees and retroactive alimony awards to the former wife.

6

With respect to the attorney's fees, section 61.16(1), Florida Statutes (2023), provides that the trial court in a marriage dissolution case "may from time to time, after considering the financial resources of both parties, order a party to pay a reasonable amount for attorney's fees, suit money, and the cost to the other party of maintaining or defending any proceeding under this chapter[.]" § 61.16(1), Fla. Stat. (2023). "The factors to consider in awarding fees in a dissolution case are 'the financial need of the requesting party and the financial ability of the other party to pay.'" *Duncan-Osiyemi v. Osiyemi*, 117 So. 3d 882, 884 (Fla. 4th DCA 2013) (quoting *Derrevere v. Derrevere*, 899 So. 2d 1152, 1153 (Fla. 4th DCA 2005)).

We recently explained the standard for awarding attorney's fees pursuant to section 61.16:

> Unlike the traditional prevailing party standard, "[t]he standard for awarding attorney's fees in dissolution cases is the financial need of the requesting party and the financial ability of the other party to pay." [*Campbell v. Campbell*, 46 So. 3d 1221, 1222 (Fla. 4th DCA 2010)]; *see also* § 61.16(1), Fla. Stat. (2023). "The central inquiry under section 61.16 is whether one spouse has a need for fees and the other spouse has the ability to pay them." *Von Baillou v. Von Baillou*, 959 So. 2d 821, 823 (Fla. 4th DCA 2007). "Embedded in the concept of financial need is the notion that an award of fees is proper 'to prevent the inequitable diminution' of a spouse's share of an equitable distribution." *Id.* at 823 (quoting *Bagley v. Bagley*, 720 So. 2d 582, 583–84 (Fla. 4th DCA 1998)).

*Reed v. Reed*, 403 So. 3d 857, 864 (Fla. 4th DCA Feb. 19, 2025) (first alteration in original).

"The purpose of [section 61.16] is to ensure that both parties will have a similar ability to obtain competent legal counsel." *Rosen v. Rosen*, 696 So. 2d 697, 699 (Fla. 1997) (citing *Canakaris v. Canakaris*, 382 So. 2d 1197 (Fla. 1980)). "[I]t is not necessary that one spouse be completely unable to pay attorney's fees for the trial court to require the other spouse to pay those fees." *Id.* In order "to ensure that both parties have similar access to competent legal counsel, the trial court must look to each spouse's need for suit money versus each spouse's respective ability to pay." *Id.*; *see also Levy v. Levy*, 900 So. 2d 737, 748 (Fla. 2d DCA 2005) (same).

7

Even with an equal distribution of assets, when one party has a higher income than the other, an attorney's fees award may be proper. *Duncan-Osiyemi*, 117 So. 3d at 884 (citing *Goldstein v. Goldstein*, 90 So. 3d 970, 972 (Fla. 4th DCA 2012)) ("Notwithstanding an equal distribution of assets, a significant income disparity can justify an award of attorney's fees and costs."); *see also Margulies v. Margulies*, 645 So. 2d 54 (Fla. 4th DCA 1994)). In *Duncan-Osiyemi*, we reversed the denial of an attorney's fee award to the wife, because although the parties' assets were evenly divided, the husband had substantially more income than the wife. 117 So. 3d at 884–85. Under the circumstances, we held that "[t]he denial of fees and costs to the wife will result in an inequitable diminution in the wife's equitable distribution award, while the husband can preserve his entire distribution." *Id.* at 884.

Here, the trial court denied attorney's fees to the former wife, concluding that the parties had an equal ability to pay their respective fees. The court found that "based on the parties' equitable distribution and respective net incomes, they are both equally able to pay attorney fees." The court also stated:

> [B]ut for the Wife liquidating her share of the equitable distribution proceeds from the sale of the former marital home, she would have had a similar ability to the Husband to pay attorney's fees. However, she voluntarily chose to diminish her equitable distribution.

Yet the court also found,

> Wife's sole basis of income is the social security she receives each month in the amount $1,228.50 and her temporary monthly support of $225.00. *To make up her deficit*, she has been using the proceeds from the sale of the home to sustain her lifestyle and pay her living expenses.

(Emphasis supplied.).

The court's findings do not support its conclusion that the parties were on equal footing to pay attorneys' fees. At the time the petition was filed, the former husband's income was two-and-a-half to three times that of the wife. Even after our reversal of the durational alimony award, the former husband will have greater income than the former wife—enough to cover all of his expenses. Her income does not cover her expenses. While the assets at the commencement of the case were equal, the court acknowledged that the former wife had to spend her assets to make up the

8

difference between her income and her expenses. Even if the former wife spent more on housing than she should have, her reasonable expenses exceeded her income and would have required diminution of her assets. Thus, the trial court's findings show that the former wife still would be required to deplete her assets to cover her reasonable expenses, which the former husband was not required to do to cover his own living expenses.

Therefore, based on the final judgment's findings, the former wife still has a need. The former husband has the ability to pay the modest attorney's fees requested so that the former wife will not have to reduce her dwindling assets. *See Duncan-Osiyemi.* I would thus reverse the denial of attorney's fees to the former wife, the requested amount being $7,500.

The trial court also improperly denied the former wife's request for a retroactive alimony award. The former wife had moved for a temporary support award when she filed her counter-petition for dissolution in April 2022, and the court, some six months later, awarded her $225 per month. This was nowhere near enough to cover her expenses, and well below the amount that the former husband had the ability to pay. The final hearing was completed October 2023, but the final judgment was not entered until the end of February 2024. Thus, for approximately sixteen months, the former wife received less than half of what the trial court awarded in the final judgment for monthly durational alimony and $659 per month less than the amount that should have been awarded based on her need and the former husband's ability to pay.

Retroactive alimony may be awarded with appropriate findings of need and ability to pay. *Vitro*, 122 So. 3d at 385 (quoting *Valentine v. Van Sickle*, 42 So. 3d 267, 274 (Fla. 2d DCA 2010)); *see also Henry v. Henry*, 191 So. 3d 995, 998–99 (Fla. 4th DCA 2016) (reversing final judgment of dissolution as to the award of retroactive alimony and remanding "for the trial court to consider the evidence and, if it determines that it is appropriate, to make the proper findings of past need and ability to pay"); *Wright v. Wright*, 411 So. 2d 1334, 1336 (Fla. 4th DCA 1982) ("[W]e can see no reason not to allow a court in an appropriate case to make an award of alimony and child support retroactive.").

In *Guimbellot v. Guimbellot*, 352 So. 3d 950 (Fla. 1st DCA 2022), the court adopted the concurrence in *Iarussi v. Iarussi*, 353 So. 3d 75, 82–84 (Fla. 1st DCA 2022) (Long, J., concurring), which held that retroactive alimony is a court creation, not authorized by the statute. While I agree with Judge Makar's dissent in *Guimbellot*, that case does not apply to the

issue raised here. In *Guimbellot,* it appears that no request was made for temporary support or alimony, as had occurred in this case.

Temporary alimony is governed by section 61.071, Florida Statutes (2022), and provides: "In every proceeding for dissolution of the marriage, a party may claim alimony and suit money in the petition or by motion, and if the petition is well founded, the court shall allow a reasonable sum therefor." Furthermore, like any interlocutory order, an award of temporary alimony is subject to modification until the conclusion of the final proceedings. *See Duss v. Duss,* 111 So. 382, 383 (Fla. 1926). "[S]ince a trial court's enforcement of an interlocutory order for the payment of temporary alimony . . . . remains completely within the court's discretion and control, a temporary support order may be annulled or modified by the trial court . . . ." *Saario v. Tiller,* 333 So. 3d 315, 323–24 (Fla. 5th DCA 2022). Thus, because temporary awards can be modified, a court has authority to make an additional temporary support award retroactive to when it was imposed, at a minimum. To hold otherwise would mean that every temporary order was final as to the amount awarded. But hearings on temporary support are usually not full-blown trials as to the need and the ability to pay. If the amounts could never be modified, both litigants and judges would be required to spend substantially more time in such hearings, and appeals would be taken from results that either party found unfair. This would simply add to the cost, not to mention the stress, of family law matters.

The former wife sought additional temporary support by way of the joint trial stipulation, noting that retroactive alimony was an issue to be tried. While the trial court denied retroactive alimony in part because retroactive support was not demanded in the wife's pleadings, the issue was tried by implied consent, as is apparent from the trial court's final judgment. *See Hemraj v. Hemraj,* 620 So. 2d 1300, 1301 (Fla. 4th DCA 1993) (finding alimony issue was tried by implied consent in dissolution action, despite absence of pleadings specifically demanding alimony, where former wife's pretrial statement listed alimony as a disputed issue to be tried, former husband did not object to that portion of the statement, and alimony issue was argued in opening and closing statements). Moreover, I cannot envision that any litigant could anticipatorily demand retroactive temporary alimony before a temporary award is set.

The trial court also denied retroactive alimony, because the prior judge in the temporary alimony award had denied it. But the order on temporary support does not mention retroactive alimony and, for the reasons stated previously, even if the court had denied retroactive alimony to the date of the petition, that decision was subject to modification. *Saario,* 333 So. 3d

at 323–24. Additionally, the first temporary support order states that it is without prejudice to either party. Where the order is without prejudice, the order may be modified at the final hearing. *See Dent v. Dent*, 851 So. 2d 819 (Fla. 2d DCA 2003). Thus, the court erred in failing to consider retroactivity at the final hearing.

Based upon the final judgment, I think it was an abuse of discretion not to award retroactive temporary alimony in some amount. While the trial court's findings as to need and ability to pay were made as of the time of the hearing, it is apparent that the income of the parties is the same as it was when the temporary alimony order was entered. It is also apparent that the former wife's income could not cover her expenses then, which were considerably more than her social security and the $225 monthly temporary award. While she did have the equitable distribution sum from the house sale, considering how her reasonable needs exceeded her income, she had to diminish her assets until the final hearing. An award of retroactive temporary alimony to replenish her assets to some degree is essential to her future support. That amount would be no more than the difference between what we have now determined to be the proper amount of alimony which is $909 per month, and the amount of the temporary award of $250, or $659 per month for the period from the temporary award to the final judgment. In my judgment, the trial court abused its discretion in not making some award of retroactive temporary support. I would reverse for the trial court to consider the issue.

*         *         *

***Not final until disposition of timely filed motion for rehearing.***

11